**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENK CIRCUIT

GREG SHRADER,

Plaintiff-Appellant,

v.

Nos. 10-7004 & 10-7015

AL BIDDINGER; EARIK BEANN;
WILLIAM BRADSTREET
STEWART; INSTITUTE OF
COSMOLOGICAL ECONOMICS;
SACRED SCIENCE INSTITUTE;
WAVE 59 TECHNOLOGIES,

Defendants-Appellees.

### APPEALS FROM THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF OKLAHOMA
### (D.C. No. 6:09-CV-00373-RAW)

Submitted on the briefs:[*]

Greg Shrader, Pro Se.

Robert D. Nelon, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.,
Oklahoma City, Oklahoma, and James E. Stewart, Omar Chaudhary, Butzel Long,
Ann Arbor, Michigan, for Defendant-Appellee Al Biddinger.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
these appeals. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.

Scott A. Law, Conner & Winters, LLP, Oklahoma City, Oklahoma, for Defendants-Appellees Earik Beann and Wave 59 Technologies.

Rory R. Wicks, Coast Law Group, LLP, Encinitas, California, for Defendants-Appellees William Bradstreet Stewart, Sacred Science Institute and Institute of Cosmological Economics, Inc.

---

Before **HOLLOWAY**, **ANDERSON**, and **TACHA**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

Plaintiff Greg Shrader appeals from a series of orders culminating in a judgment dismissing this action in its entirety for lack of personal jurisdiction over any of the named defendants. We affirm for reasons explained below.

## I.  PLEADINGS AND DISTRICT COURT PROCEEDINGS

Mr. Shrader brought this tort action pro se, asserting claims for defamation, false-light invasion of privacy, intentional infliction of emotional distress, and civil conspiracy against three groups of defendants: (1) the Stewart defendants (William Bradstreet Stewart and his companies Sacred Science Institute and Institute of Cosmological Economics, Inc.); (2) the Beann defendants (Earik Beann and his company Wave59 Technologies International (Wave59)); and (3) defendant Al Biddinger. None of the defendants resides in Oklahoma, where the case was filed. Mr. Shrader lives and works in Oklahoma, where he produces books and courses for market traders. Mr. Stewart partnered with him for a time,

-2-

editing, publishing, and selling Mr. Shrader's materials through his internet-based companies. The two ceased doing business together after Mr. Stewart voiced concerns over the usefulness and originality of Mr. Shrader's most recent work. All of Mr. Shrader's tort claims derive from an email drafted by Mr. Stewart briefly explaining why the two parted ways. Mr. Shrader alleges that the email was defamatory and was intended to ruin his professional reputation. Mr. Stewart sent the email to a list of his customers. Mr. Biddinger then expanded its audience by posting it to a traders' forum on the Wave59 web site in response to an inquiry about Mr. Shrader's materials. Finally, the email remained accessible on the forum for some time as a result of the Beann defendants' failure to promptly remove it.

After most of the defendants (all save Wave59) had sought dismissal for lack of personal jurisdiction, Mr. Shrader moved to amend his complaint for a second time. The district court denied leave to amend on alternative grounds. First, the court noted Mr. Shrader's procedural noncompliance in failing to confer with opposing counsel to determine whether the motion would be contested. Second, the court concluded that further amendment of the complaint would be immaterial in that Mr. Shrader's response to the defendants' pending motions to dismiss would show whether he could re-frame his pleadings so as to forestall dismissal. If so, amendment could then be permitted; if not, amendment would be futile.

Several weeks later, the district court entered three separate orders that granted the pending motions to dismiss for lack of personal jurisdiction, and Mr. Shrader filed his first notice of appeal (Appeal No. 10-7004). The appeal was premature, however, as the claims against Wave59 remained pending. Shortly thereafter, Wave59 moved to dismiss for lack of personal jurisdiction, and the court granted its motion as well. Mr. Shrader sought reconsideration through a "Motion for Objection of Motions to Dismiss," attaching some additional exhibits relating to the issue of personal jurisdiction. The court admitted the exhibits, but otherwise denied the motion. Mr. Shrader then filed his second notice of appeal (Appeal No. 10-7015), citing all of the dismissal orders, the order denying his motion to amend, and the order denying reconsideration.[1] This second, timely appeal subsumed all of the matters included in the first appeal. Thus, although the prematurity of the first appeal was cured by the later final disposition of the case, *see, e.g.*, *B. Willis, C.P.A., Inc. v. BNSF Ry. Corp.*, 531 F.3d 1282, 1295 (10th Cir. 2008), we nevertheless dismiss the first appeal as redundant, *see, e.g.*, *Hutchinson v. Pfeil*, 208 F.3d 1180, 1183 n.5 (10th Cir. 2000).[2]

---

[1]     Mr. Shrader also refers to an order denying an earlier motion for leave to file objections to the motions to dismiss. These objections were in fact filed and his motion was properly denied as moot. Further discussion of this collateral misunderstanding is unnecessary.

[2]     The first appeal also generated some confusion regarding our appellate record, and we take this opportunity to clarify the matter. While his case was divided between appellate and district court forums, Mr. Shrader moved in this

(continued...)

## II. PERSONAL JURISDICTION

### A.  General Principles

The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069-70 (10th Cir. 2008).  We review the matter de novo, "taking as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint."  *Id.* at 1070 (citation omitted).  We also must resolve any factual disputes in the plaintiff's favor.  *Id.*

Where, as in Oklahoma, the state long arm statute supports personal jurisdiction to the full extent constitutionally permitted, due process principles govern the inquiry.  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000).  "[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play

---

[2](...continued)
court to file the same exhibits he later submitted when seeking reconsideration in the district court, as noted above.  Defendants opposed the motion to the extent it sought to include in the appellate record exhibits that had not been submitted to the district court prior to Mr. Shrader's (first) appeal.  With the district court's subsequent admission of the exhibits and their inclusion in the augmented record prepared for the second appeal, the dispute over Mr. Shrader's appellate motion has been obviated and the motion is denied as moot.

and substantial justice.'"  *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  Such contacts may give rise to personal

jurisdiction over a non-resident defendant either generally, for any lawsuit, or

specifically, solely for lawsuits arising out of particular forum-related activities:

> General jurisdiction is based on an out-of-state defendant's
> "continuous and systematic" contacts with the forum state, and does
> not require that the claim be related to those contacts.  Specific
> jurisdiction, on the other hand, is premised on something of a *quid*
> *pro quo*: in exchange for "benefitting" from some purposive conduct
> directed at the forum state, a party is deemed to consent to the
> exercise of jurisdiction for claims related to those contacts.

*Id.* at 1078 (citation omitted).

In contrast to the single, overarching requirement of continuous and

systematic contacts for general jurisdiction, the "minimum contacts" test for

specific jurisdiction encompasses two distinct requirements:  "first, that the

out-of-state defendant must have 'purposefully directed' its activities at residents

of the forum state, and second, that the plaintiff's injuries must 'arise out of'

defendant's forum-related activities."  *Id.* at 1071 (quoting *Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 472 (1985)).  This court's most extensive discussion of

specific jurisdiction, especially as to the "purposeful direction" requirement, is set

out in *Dudnikov*, where we drew heavily on the Supreme Court's elaboration of

this requirement in *Calder v. Jones*, 465 U.S. 783 (1984).[3]  "Distilling *Calder* to

_____

[3]     In *Calder*, a nationally distributed magazine based in Florida published an
(continued...)

-6-

its essence," we delineated the following three salient factors that together indicate "purposeful direction":

> (a) an intentional action (writing, editing, and publishing the article), that was (b) expressly aimed at the forum state (the article was about a California resident and her activities in California; likewise it was drawn from California sources and widely distributed in that state), with (c) knowledge that the brunt of the injury would be felt in the forum state (defendants knew Ms. Jones was in California and that her career revolved around the entertainment industry there).

*Dudnikov*, 514 F.3d at 1072. We also elaborated on the "arising out of" requirement, particularly its causal aspect, *see id.* at 1078-79.

Finally, even if the "purposeful direction" and "arising out of" conditions for specific jurisdiction are met, that is not the end of the matter. "[W]e must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Id.* at 1080 (quotation omitted). But at that point, "it is incumbent on defendants to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable,"

---

[3](...continued)
allegedly defamatory article about actress Shirley Jones, who filed suit over the matter in California. Although *Calder* involved a magazine article, "the principles articulated there can be applied to cases involving tortious conduct committed over the Internet." *Tamburo v. Dworkin*, 601 F.3d 693, 703 n.7 (7th Cir.), *cert. denied*, 131 S. Ct. 567 (2010); *see also* Raymond T. Nimmer, *Law of Computer Technology* § 19.12 (Updated Sept. 2010) (discussing *Calder*'s adaptation to internet cases and noting its particular aptness for intentional tort cases involving defamation and similar issues).

*id.* (quotation omitted), and the defendants have made no effort in that regard here.

**B.  Personal Jurisdiction in the Internet Context**

A number of circuits have addressed personal jurisdiction in the internet context, considering whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster, or sender.  The basic problem with relating such activities directly to the general principles developed pre-internet is that, in a sense, the internet operates "in" every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless.  As the Fourth Circuit explained in an early effort to address the matter:

> Applying the traditional due process principles governing a State's jurisdiction over persons outside of the State based on Internet activity requires some adaptation of those principles because the Internet is omnipresent—when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction.  If we were to conclude as a general principle that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist.  The person placing information on the Internet would be subject to personal jurisdiction in every State.

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

To avoid this untenable result, it is necessary to adapt the analysis of personal jurisdiction to this unique circumstance by placing emphasis on the internet user or site *intentionally directing* his/her/its activity or operation *at* the forum state rather than just having the activity or operation accessible there. A good example is *ALS Scan*'s test for specific jurisdiction arising out of internet activity:

> [A] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) *directs electronic activity into the State*, (2) *with the manifested intent of engaging in business or other interactions within the State*, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts. Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

*Id.* at 714. Actually, as *ALS Scan* acknowledges, this emphasis on intentionally directing internet content or operations at the forum state has its grounding in the "express aiming" requirement the Supreme Court developed in *Calder* to deal with the somewhat analogous question of specific jurisdiction based on content in nationally distributed print media. *See id.* Thus, while this court has yet to flesh out a comprehensive position in a published opinion dealing with omnipresent internet activity like web sites and posts, the *ALS Scan* approach, which is fairly

representative of most circuits that have addressed the matter, is compatible with our discussion of personal jurisdiction in *Dudnikov*.[4]

This approach and its counterparts in other circuits have some immediate implications that are relevant here. The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state. *See, e.g.*, *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010); *Carefirst of Md. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 401 (4th Cir. 2003); *Revell v. Lidov*, 317 F.3d 467, 471-76 (5th Cir. 2002); *cf. Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297, 1298 (10th Cir. 1999) (holding operation of web site insufficient for general jurisdiction; web site not considered in analysis of specific jurisdiction because claims were not related to it). Similarly, posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside). *See, e.g.*, *Johnson v. Arden*, 614 F.3d at 797; *Revell*, 317 F.3d at 475-76; *Young v. New Haven*

---

[4]     The internet was involved in *Dudnikov*, where the defendant shut down the plaintiffs' online auction by sending a notice of copyright infringement to eBay. But personal jurisdiction was based on that direct commercial action by the defendant, not on an indiscriminately accessible web site, forum posting, or mass email (and eBay was not sued for operating the web site). Thus, *Dudnikov* did not present an occasion to settle on an approach to personal jurisdiction in the latter, uniquely internet circumstances.

*Advocate*, 315 F.3d 256, 258-59; 262-64 (4th Cir. 2002). Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what "more" could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.

## C. The Beann Defendants

### 1. Jurisdiction based on operation of internet forum

The answer to the issue of general jurisdiction over the Beann defendants, insofar as it concerns operation of the Wave59 forum where the offending email was posted, is fairly straightforward, particularly on the sparse facts alleged by Mr. Shrader. The forum was simply a vehicle by which members could exchange information, and there is no indication that the Beann defendants interfered with its operation so as to alter its basic passive character (Mr. Shrader's primary complaint is that they *did not* interfere and remove the posting). Taking guidance from the case law noted above dealing with passive web sites, we conclude that Mr. Shrader failed to demonstrate general jurisdiction over the Beann defendants based on operation of the Wave59 forum.[5]

---

[5] Use of terms like "passive," "active," and "interactive" is quite natural, almost unavoidable, in describing salient characteristics of web sites. But these terms can carry special implications in light of the seminal internet-jurisdiction

(continued...)

As for specific jurisdiction, the Beann defendants might be subject to suit in Oklahoma based on the allegedly defamatory email posted on the Wave59 forum if they had intentionally directed the forum at Oklahoma. But there is no indication the forum targeted an Oklahoma audience or the work of Oklahoma writers, much less Mr. Shrader personally. Nor are there any facts suggesting the

5(...continued)
decision in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), which proposed a "sliding scale" framework employing these terms to demarcate different regions along the scale:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* at 1124 (citations omitted). Some courts have adopted this approach for analyzing internet contacts. *See Tamburo*, 601 F.3d at 703 n.7 (citing cases applying *Zippo* test, though declining to adopt it). But even these courts tend to employ it more as a heuristic adjunct to, rather than a substitute for, traditional jurisdictional analysis. *See, e.g.*, *Revell*, 317 F.3d at 471-72; *Young*, 315 F.3d at 261-64 (applying *Zippo* model circuit previously adopted in *ALS Scan*). This court has not taken a definitive position on the *Zippo* sliding-scale test, though we mentioned *Zippo* in *Soma*, 196 F.3d at 1296-97. Nor do we take such a position here in merely considering the passive character of the Wave59 forum as germane to our jurisdictional analysis.

-12-

forum had some other connection to Oklahoma. On the contrary, Mr. Shrader's pleadings stressed the forum's *non*-local nature, repeatedly referring to the fact that it drew an audience from all over the world.

Mr. Shrader attempted to tie the Beann defendants to the acts of the other defendants by alleging, in conclusory and speculative fashion, a civil conspiracy to interfere with his business. These are just the sorts of allegations *Dudnikov* directs us not to consider, as it pointedly limits the facts that must be accepted for purposes of the jurisdictional analysis to those "well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff['s] complaint," 514 F.3d at 1070 (citation omitted). As we have held elsewhere, "[i]n order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) (quoting *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005)). S*ee generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (holding conclusory allegation of conspiracy is insufficient, even when coupled with parallel conduct by defendants). Mr. Shrader has not done that.

**2. General jurisdiction for operation of commercial web site**

The question of general jurisdiction here is potentially more complicated when the Wave59 web site's commercial activities are considered. These do not

affect the analysis of specific jurisdiction, since only the contacts out of which

Mr. Shrader's tort claims arise are relevant in that respect. As the Fifth Circuit

explained in analogous circumstances:

> For specific jurisdiction we look only to the contact out of which the cause of action arises—in this case the maintenance of the internet bulletin board. Since this defamation action does not arise out of the solicitation of [business ] . . ., those [commercial] portions of the website need not be considered.

*Revell*, 317 F.3d at 472 (footnote omitted). But the case for general jurisdiction,

which is based on all of a defendant's contacts with the forum state, can sweep

much broader to include the sales side of the site.

It should be emphasized that, as we are dealing with general jurisdiction,

the commercial contacts here must be of a sort "that approximate physical

presence" in the state—and "engaging in commerce with residents of the forum

state is not in and of itself the kind of activity that approximates physical

presence within the state's borders." *Bancroft & Masters, Inc. v. Augusta Nat'l,*

*Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *see Revell*, 317 F.3d at 471 & n.19;

*Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002). Nevertheless, most courts

would agree that operating a web site selling products to residents of a state *can*

subject the seller to general jurisdiction in that state, depending on the nature and

degree of commercial activity with the forum state. *See, e.g.*, *Lakin v. Prudential*

*Sec, Inc.*, 348 F.3d 704, 712-13 (8th Cir. 2003) (noting determination of general

jurisdiction over commercial web site would require development of facts

regarding quantity of transactions with forum residents); *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (same).

The case law sets the bar quite high, however, denying general jurisdiction absent substantial sales. *Compare Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (holding twelve internet sales for $14,000 over eight years insufficient for general jurisdiction); *Revell*, 317 F.3d at 471 (holding sales of thirty-five subscriptions in two years insufficient for general jurisdiction); *Bird*, 289 F.3d at 873-74 (holding 4,666 internet domain-name registrations, specifically analogized to sales, insufficient for general jurisdiction); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623-24 (4th Cir. 1997) (holding twenty-six mail order customers in forum state insufficient for general jurisdiction) *with Gator.Com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1080 (9th Cir. 2003) (finding general jurisdiction based in part on "millions of dollars in sales, driven by an extensive, ongoing, and sophisticated sales effort involving large numbers of direct email solicitations and millions of catalog sales"), *vacated as moot on reh'g en banc on basis of settlement*, 398 F.3d 1125 (9th Cir. 2005). In sum, the best general formulation for this niche of the law may have been provided by the district court in Oklahoma: "A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained*

*basis with a substantial number of residents* of the forum." *Smith v. Basin Park Hotel, Inc.*, 178 F. Supp. 2d 1225, 1235 (N.D. Okla. 2001) (emphasis added).

Turning back to our case, Mr. Shrader has not emphasized this aspect of the jurisdictional issue, but he has not completely ignored it. He submitted, and the district court admitted, several exhibits relating to commercial activity on the Wave59 site, which show that (1) he purchased books, courses, and a data feed from Wave59; (2) another person from Tulsa purchased a book from Wave59; and (3) Wave59 advertized in a magazine called TradersWorld, which was available for purchase at a Tulsa bookstore.[6] This showing is clearly insufficient to warrant the exercise of general personal jurisdiction over the Beann defendants.

## D. Defendant Biddinger – Specific Personal Jurisdiction for Posting the Allegedly Defamatory Email on the Wave59 Internet Forum

After receiving Mr. Stewart's email about the termination of his business relationship with Mr. Shrader, Mr. Biddinger posted the email on the Wave59 forum in response to an inquiry from another forum member about Mr. Shrader's work. There is no indication that this other member had any connection with Oklahoma. And, as already explained, the Wave59 site and its forum have no particular connection with Oklahoma. Finally, there is nothing about the content

---

[6] There is no indication that TradersWorld is an Oklahoma magazine. We have repeatedly held that advertizing in nationally distributed magazines does not support general jurisdiction. *See Doering ex rel. Barrett v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) (citing *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994)).

of Mr. Shrader's work, or his internet customer base, that has been shown to have any tie to Oklahoma. In sum, the only connection with Oklahoma shown on our record is that Mr. Shrader lives and produces his materials there.

As noted earlier, merely posting information on the internet does not, in itself, subject the poster to personal jurisdiction wherever that information may be accessed. This principle has particular salience for defamation cases: "Posting on the internet from [outside the forum state] an allegedly defamatory statement [about a forum resident] . . . does not create the type of substantial connection between [the poster] and [the forum state] necessary to confer specific personal jurisdiction." *Johnson v. Arden*, 614 F.3d at 797. "[T]he plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction under *Calder*." *Revell*, 317 F.3d at 473; *accord Young*, 315 F.3d at 262. Rather, defamatory postings may give rise to personal jurisdiction if they are directed specifically at a forum state audience or otherwise make the forum state the focal point of the message. *Johnson*, 614 F.3d at 796; *Revell*, 317 F.3d at 473; *Young*, 315 F.3d at 263. The thrust of this case law is consistent with this circuit's restrictive reading of *Calder*: "Some courts have held that the 'expressly aimed' portion of *Calder* is satisfied when the defendant individually targets a known forum resident. We have taken a somewhat more restrictive approach, holding

-17-

that *the forum state itself must be the focal point of the tort*."[7]  *Dudnikov*,

514 F.3d at 1074 n.9 (emphasis added) (citation, alteration, and quotations

omitted).

Oklahoma was not the focal point of the email posted by Mr. Biddinger,

either in terms of its audience or its content.  We have already seen that the forum

where he posted the email targeted a trading community with no particular tie to

Oklahoma.  As for content, the email was about Mr. Shrader's work.  That work

was marketed and sold worldwide through the internet (there is no suggestion that

Mr. Shrader had any local sales outlet) and there is nothing about the nature of

the work inherently linking it to Oklahoma—as there might be had Mr. Shrader

been located in a trading center like New York or Chicago and relied on that tie in

---

[7]     The facts in *Calder* flesh out this critical idea.  Publication of the allegedly
defamatory article about actress Shirley Jones supported specific personal
jurisdiction in California not simply because she lived there but because her
professional work was uniquely tied to California, where the television and film
industries are centered.  *Calder*, 465 U.S. at 788-89 (noting California was "the
focal point both of the story and of the harm suffered," in that the story was
"drawn from California sources" and "impugned the professionalism of an
entertainer whose television career was centered in California"); *cf. Remick v.
Manfredy*, 238 F.3d 248, 259 (3d Cir. 2001) (holding distribution of defamatory
letter to "the boxing community" did not support personal jurisdiction where
forum state lacked "unique relationship with the boxing industry, as distinguished
from the relationship in *Calder* between California and the motion picture
industry"); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir.
1994) (distinguishing story in *Calder* from press release about track star's
positive drug test in part because, although release was circulated by third parties
in plaintiff's home state of Ohio, plaintiff "is an international athlete whose
professional reputation is not centered in Ohio").

producing or marketing his materials. He produced his materials in Oklahoma because he happened to live there; his professional reputation in the trading community was not tied to Oklahoma, as Ms. Jones's was to the California entertainment industry in *Calder*. To be sure, he suffered harm in Oklahoma in the sense that he incurred harm and resided in Oklahoma when he did so. But, as noted above, plaintiff's residence in the forum state, and hence suffering harm there, does not alone establish personal jurisdiction over a defendant who has not purposefully directed his activities at the state.

It is instructive to compare the instant case with a recent unpublished decision in which this court found specific personal jurisdiction for defamation and related tort claims arising out of a derogatory blog posting that adversely affected the plaintiff's business in New Mexico. *See Silver v. Brown*, 382 F. App'x 723 (10th Cir. 2010). Differences in the two factual scenarios point up what is missing here. First, the blog on which the defendant in *Silver* posted the derogatory message was not a neutral forum already in place for other purposes, but was created by the defendant specifically to provide a launch pad for his attack on the plaintiff's business. *Id.* at 725-26, 729. Indeed, the names of the plaintiff and his business were incorporated in the blog's domain name, a fact this court found significant in light of the defendant's deliberate exploitation of search-engine technology to funnel searches regarding the plaintiff and his business to the blog, which warned them about the plaintiff and provided a link to

-19-

"reputable" competitors. *Id.* at 725-26 & n.2, 730. Finally, unlike here, there was no indication that the plaintiff's business, raising capital for new ventures, was conducted through cyberspace with no particular tie to the forum state; on the contrary, "that state [was] unquestionably the center of his business activities." *Id.* at 730. The plaintiff "funded dinner meetings for eleven years, one evening a month at which New Mexico entrepreneurs pitched their deals to [prospective] investors," and "his work had helped create or save employment for more than 3,000 people in New Mexico." *Id.* (quotation omitted). In short, both the derogatory message and the blog it was posted on uniquely targeted a business centered in the forum state and were directed at an audience that would inherently have included a substantial number of forum state residents and businesses.

Nothing like that is true of the forum and post at issue here. Given the geographically-neutral content of the message posted by Mr. Biddinger and the inquiry that prompted it (regarding the status of a business selling market-trading materials over the internet), the geographically-neutral nature of the forum where it was posted, and the lack of any facts developed by Mr. Shrader to suggest otherwise, there is no basis for concluding that Mr. Biddinger targeted his post at Oklahoma. On the contrary, every indication is that Mr. Biddinger targeted the post at a nation-wide or world-wide audience of market traders with no inherent interest in or tie to Oklahoma. That is an insufficient basis for exercising personal jurisdiction.

-20-

**E. Stewart Defendants**

   **1. General jurisdiction based on commercial web site operations**

   Mr. Stewart is, of course, of primary interest as the former business associate of Mr. Shrader who authored the allegedly defamatory email directly underlying the various tort claims asserted in this case. But we will start our jurisdictional analysis by considering the exercise of general jurisdiction over Mr. Stewart and his companies based instead on their commercial web site operations, as this possibility can be dismissed quickly in light of its substantial overlap with a similar point already considered and rejected in connection with the Beann defendants. Again, it bears emphasizing that general jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state. *Revell*, 317 F.3d at 471 & n.19; *Bird*, 289 F.3d at 874; *Bancroft & Masters*, 223 F.3d at 1086.

   Mr. Shrader submitted exhibits indicating that the Stewart defendants (1) sold books to Mr. Shrader and another Oklahoma resident, and (2) advertized in TradersWorld magazine, which was available for purchase at a Tulsa bookstore. These scant commercial transactions essentially mirror those noted in connection with the Beann defendants, which we have already held do not show defendants "actually and deliberately used [their] website to conduct commercial transactions on a sustained basis with a substantial number of residents of the

-21-

forum," *Smith*, 178 F. Supp. 2d at 1235. The case law set out in our discussion of the Beann defendants reflects the rejection of general jurisdiction on the basis of considerably more commercial contact with the forum state.

**2. Defendant Stewart – general jurisdiction based on business relationship with Mr. Shrader and visit to Oklahoma to work with Mr. Shrader**

Unlike the other defendants in this case, Mr. Stewart had for some time an ongoing business relationship with Mr. Shrader, editing and selling his materials on market trading. This was conducted primarily through email, but Mr. Stewart also visited Mr. Shrader once in Oklahoma for a period of eleven days to help him work on his materials. We must determine whether these additional contacts support general jurisdiction over Mr. Stewart.[8]

Simply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416-18 (1984); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1073, 1080-81 (10th Cir. 2004). Even more to the point, the Eighth Circuit relied on

---

[8] These contacts do not implicate specific jurisdiction, because the tort claims here arise solely from the email Mr. Stewart later sent to his customers. While the email touched on the past business dealings of the two men, it is the email's allegedly defamatory message and prejudicial distribution that give rise to the tort claims here, not the parties' terminated relationship. This court's discussion of the "arising out of" requirement in *Dudnikov*, 514 F.3d at 1078-79, rejecting a loose "substantial connection" test and insisting on retention of a true causal element, supports our conclusion on this point.

-22-

*Helicopteros* to hold that a defendant's collaboration with a forum-state author and publishing relationship with a forum-state company did not support general jurisdiction in *Johnson v. Woodcock*, 444 F.3d 953, 955-56 (8th Cir. 2006). *Johnson v. Woodcock* also reflects the accepted view that correspondence with a forum resident does not support general jurisdiction. *See id.* at 956; *accord Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Likewise, sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction. *See, e.g.*, *Helicopteros*, 466 U.S. at 416-18; *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010); *Johnson*, 614 F.3d at 795. As the Ninth Circuit put it, "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

In light of such authority, we cannot say that Mr. Stewart's direct business contacts with Oklahoma, evidently all limited to his dealings with Mr. Shrader, are sufficient to subject him to general personal jurisdiction there.

### 3. Stewart defendants – specific jurisdiction based on defamatory email allegedly sent to large list of addressees

The analysis of specific jurisdiction over the Stewart defendants based on the drafting and sending of the offending email overlaps in substantial part with the analysis of specific jurisdiction over Mr. Biddinger for his later posting of the

email on the Wave59 forum. That is, insofar as the focal point of the message is concerned, what we said above regarding the lack of any inherent tie to Oklahoma is obviously equally pertinent here.

But that still leaves the critical issue of the audience targeted by the email. And on this point the analysis could potentially diverge significantly, given the targeted nature of email, which is sent to a particular recipient, compared to the indiscriminate accessibility of an internet forum. Here, the apt analogues may be phone calls, faxes, and letters made or sent by out-of-state defendants to forum residents. These have been found sufficient to support specific personal jurisdiction when they directly give rise to the cause of action (typically for fraud effected by the communication), *see, e.g.*, *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *Oriental Trading Co. v. Firetti*, 236 F.3d 938, 943 (8th Cir. 2001); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212-13 (5th Cir. 1999); While case law involving defamation-by-email is less plentiful, a number of district court decisions have followed suit to find specific jurisdiction over out-of-state emailers. *See, e.g.*, *Middlebrook v. Anderson*, No. Civ. A. 3:04-CV-2294, 2005 WL 350578, at *3-*4 (N.D. Tex. Feb. 11, 2005) (unpub.) (citing several decisions recognizing specific personal jurisdiction based, at least in part, on emails sent into forum state); *Mark Hanbury Ministries, Inc. v. Lubet*, No. 1:06-CV-114, 2007 WL 1004169, at *11 (E.D. Tenn. Mar. 30, 2007) (unpub.).

There is, however, a distinguishing characteristic of email that must be taken into account. Although email is directed to particular recipients, email addresses typically do not reveal anything about the geographic location of the addressee. Thus, if the plaintiff does not show that the defendant otherwise knew where the recipient was located, the email itself does not demonstrate purposeful direction of the message to the forum state, even if that happens to be where the recipient lived. *See Rice v. Karsch*, 154 F. App'x 454, 462 (6th Cir. 2005); *Watiti v. Walden Univ.*, No. CIV. A. 07-4782 (IAP), 2008 WL 2280932, at *10-*11 (D. N.J. May 30, 2008) (unpub.).

Here, Mr. Shrader alleged that Mr. Stewart sent the email to thousands of customers and knew that some of them resided in Oklahoma. If this were all we had to consider, Mr. Shrader might have satisfied his burden on personal jurisdiction, provided his allegation qualified as a "plausible, non-conclusory, and non-speculative" fact to be accepted for purposes of the jurisdictional analysis under *Dudnikov*, 514 F.3d at 1070. But there is more to consider, as Mr. Stewart submitted affidavits averring generally that he did not send the email to all of his clients and specifically that he did not send it to anyone in Oklahoma. R. vol. 1 at 266, para. 5; 422, para. 6. As Mr. Stewart emphasizes, even well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit (here, based on personal knowledge of the party with direct access to the operative facts). *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.

-25-

1995).  Thus, absent an opposing showing by Mr. Shrader, through specific averments, verified allegations, or other evidence sufficient to create a genuine issue of fact, Mr. Stewart's affidavits carry the issue.  S*ee, e.g.*, *Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 n.2 (10th Cir. 1983).

Mr. Shrader did not submit any evidence, or even offer the name, of a single Oklahoma resident who received the email from Mr. Stewart.  The record does contain a copy of a post to the Wave59 forum dated November 29, 2009, in which a member (identified only as "Bart") refers to his receipt of what clearly sounds like the Stewart email, in a form suggesting that it had had a wide distribution:

> I received a form or bulk email from Sacred Science Institute that they were discontinuing the publication of [Mr. Shrader's] work. The email said that most of the "secret" material was widely available in other Fibonacci texts so the list of books that others have shared [in posts on the forum] is probably your best bet.

R. vol.1 at 506.  But all this post indicates is that Mr. Stewart sent the email in bulk fashion to multiple recipients (which he never denied); it does not indicate that any of the recipients resided in Oklahoma, much less that Mr. Stewart knew they resided there when he sent the email.  In sum, Mr. Shrader failed to make a prima facie showing that Mr. Stewart directed the allegedly defamatory email to anyone in Oklahoma.  Under principles we have previously discussed, that is a

fatal deficiency in his case for specific personal jurisdiction over the Stewart defendants.

Having analyzed the pertinent facts in light of the governing law, we agree with the district court's determination that Mr. Shrader failed to establish personal jurisdiction over any of the defendants. Thus, unless some procedural error tainted the proceedings leading to that determination, we must affirm the district court's dismissal of the action. We turn, therefore, to the other objections raised by Mr. Shrader on this appeal.

## III. REMAINING ISSUES ON APPEAL

### A. Denial of Amendment

The district court cited two reasons for denying Mr. Shrader leave to amend his complaint a second time following the submission of defendants' motions to dismiss: (1) Mr. Shrader had failed to comply with a local rule requiring counsel to confer and attempt to resolve any differences with respect to non-dispositive motions before filing them with the court; and (2) formal amendment of the complaint to respond to the pending motions was unnecessary in that "[Mr. Shrader's] responses to the motions to dismiss (as well as Defendants' replies) w[ould] adequately inform the court of the jurisdictional posture of the case." R. vol. 1 at 275. We review this matter for an abuse of discretion, *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007), and, finding none, affirm the district court's ruling.

Noncompliance with procedures required by local rule is a proper basis for denial of a motion to amend. *See, e.g.*, *Barrett v. Orman*, 373 F. App'x 823, 826 (10th Cir. 2010) (following *Lambertson v. Utah Dep't of Corr.*, 79 F.3d 1024, 1029-30 (10th Cir. 1996) (upholding denial of motion to amend based in part on failure to comply with local rules)). The operative local rule here provides in pertinent part:

> [T]his Court shall refuse to hear any [non-dispositive] motion or objection unless counsel for movant first advises the Court in writing that counsel personally have met and conferred in good faith and, after a sincere attempt to resolve differences, have been unable to reach an accord. No personal conference shall be required, however, where the movant's counsel represents to the Court in writing that movant's counsel has conferred with opposing counsel by telephone and . . . the distance between counsel's offices renders a personal conference infeasible.

E.D. Okla. LCvR 7.1.[9] The district court noted that all Mr. Shrader had done was send an email to opposing counsel and then file his motion when a prompt reply was not forthcoming. The district court did not abuse its discretion in finding that this failed to comply with the rule and in rejecting Mr. Shrader's motion for such noncompliance.[10]

---

[9] Mr. Shrader has represented himself in these proceedings, but pro se litigants must follow the same rules of procedure that govern other litigants, *Garrett v. Selby Connor Maddox & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

[10] We need not rely on the district court's alternative reason for denying the motion, though it appears consistent with this court's decision in *Fields* affirming the denial of a motion to amend on a similar basis. There the plaintiff objected that he had not been allowed to amend his pleadings to support his case on a point

(continued...)

**B. DISMISSAL OF CASE INSTEAD OF TRANSFER**

Finally, Mr. Shrader argues that even if he failed to establish personal jurisdiction over the defendants, the district court should not have dismissed the action, but should have transferred the case to another court where the action could have been brought. We have recognized such transfers as a discretionary option under 28 U.S.C. § 1631 that should be considered to cure deficiencies relating to personal jurisdiction. *See Trujillo v. Williams*, 465 F.3d 1210, 1222-23 & n.15 (10th Cir. 2006). But in this case there was a patent impediment to such a course: the three sets of defendants reside in different states, so there was no single court to which the action could be transferred with any assurance that jurisdiction would have been proper. We are aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631. Under the circumstances, we cannot say the district court abused its discretion in dismissing this action without prejudice upon determining that personal jurisdiction was lacking over all of the defendants.

---

[10](...continued)
challenged by the defendants, although he had been given an opportunity to offer such support in response to the defendants' motion. This court affirmed, holding that "[b]ecause [plaintiff] was given an . . . opportunity to file such support [by other means], he suffered no prejudice." *Fields*, 511 F.3d at 1113.

Appeal No. 10-7004 is DISMISSED as moot. The judgment of the district court is AFFIRMED. Appellant's Motion to File Exhibits to Brief is DENIED as moot.