DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KEVIN BARONOWSKY,**
Appellant,

v.

**CARLO PONTI MAIORANO,** n/k/a **CARLO PONTI,**
Appellee.

No. 4D20-1997

[August 18, 2021]

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE-18-021357.

David O. Batista of Shutts & Bowen LLP, Fort Lauderdale, and Julissa Rodriguez and Alina A. Gomez of Shutts & Bowen LLP, Miami, for appellant.

Warren P. Gammill of Warren Gammill & Associates, P.L., Miami, for appellee.

WARNER, J.

Appellant, Kevin Baronowsky, the defendant in an internet defamation case, appeals an order denying his motion to dismiss for lack of personal jurisdiction. Because we conclude that Baronowsky purposefully directed his internet postings to Florida under the circumstances present in this case, the Florida courts can exercise personal jurisdiction over him. We thus affirm the trial court's order.

The plaintiff/appellee, Dr. Carlo Ponti Maiorano, is an anesthesiologist who was once married to Baronowsky's former wife. Prior to the events leading to this case, Dr. Maiorano was employed by Greater Florida Anesthesiologists, LLC and was the Chief Anesthesiologist and Medical Director at Hallandale Outpatient Surgical Center. He had also secured a contract for Greater Florida Anesthesiologists to provide anesthesiology services at Cypress Creek Medical Center in Fort Lauderdale and had been

offered an ownership opportunity and the position of Chief Anesthesiologist there.

In 2017, Baronowsky, who lives in Nevada, bought the domain name www.drcarlomaiorano.com and began using it to publish a series of webpages containing allegedly defamatory statements about Dr. Maiorano. On his webpages, Baronowsky expressly identified Dr. Maiorano as an anesthesiologist in Hallandale and Fort Lauderdale. He stated that Dr. Maiorano had been arrested and included screenshots of his booking photo and personal information. He also stated that Dr. Maiorano had been subjected to disciplinary action by the medical board. At the top of one of the webpages, he writes: "WARNING: Is Dr. Carlo Maiorano your Anesthesiologist?"

According to Dr. Maiorano, soon after the webpages were published, potential patients began contacting his employers and expressing "serious concerns and reservations" about him. He was eventually demoted and forced to resign from Greater Florida Anesthesiologists, lost his ownership opportunity at Cypress Creek Medical Center, and lost another employment opportunity in California. He also alleged suffering severe mental and emotional distress.

Dr. Maiorano sued Baronowsky in Broward County circuit court. The complaint alleges three causes of action for defamation and one cause of action for tortious interference with a business relationship. It alleges that Baronowsky is subject to personal jurisdiction in Florida because he committed tortious acts in the state by publishing defamatory statements that were accessed and read by Florida residents and that caused injury to Dr. Maiorano in Florida.

Baronowsky moved to dismiss for lack of personal jurisdiction. He claimed that the complaint failed to allege sufficient facts to establish jurisdiction under the long-arm statute and argued that he did not have sufficient minimum contacts with Florida to satisfy due process requirements. The trial court denied his motion, and this appeal was filed.

### Analysis

This Court has de novo review of the order denying Baronowsky's motion to dismiss for lack of personal jurisdiction. *Wendt v. Horowitz*, 822 So. 2d 1252, 1256 (Fla. 2002); *Sun Coast Nursing Ctrs., Inc. v. Littman*, 293 So. 3d 1056, 1059 (Fla. 4th DCA 2020).

Determining whether a Florida court can exercise personal jurisdiction over a nonresident defendant requires a two-step inquiry: (1) whether the complaint alleges sufficient facts to support the exercise of jurisdiction under the long-arm statute; and (2) whether the defendant has sufficient minimum contacts with the state to satisfy due process requirements. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500–02 (Fla. 1989); *Astro Aluminum Treating Co., Inc. v. Inter Contal, Inc.*, 296 So. 3d 462, 464 (Fla. 4th DCA 2020).

## Long-Arm Statute

The trial court ruled that Dr. Maiorano's allegations were sufficient to establish long-arm jurisdiction under section 48.193(1)(a)(2), Florida Statutes (2017). Section 48.193(1)(a)(2) (formerly numbered as (1)(b)) provides that a person who commits a tortious act within the State of Florida, whether or not he is a citizen or resident of the state, submits himself to the jurisdiction of the state's courts for any cause of action arising from that act. Applying this subsection, the Florida Supreme Court has held that a nonresident who posts defamatory material about a Florida resident on a website accessible in Florida commits a tortious act within the state, and therefore submits himself to the jurisdiction of the state's courts, once the material is accessed in Florida. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214–16 (Fla. 2010).

Baronowsky does not challenge the application of *Internet Solutions* to this case. Instead, he argues that the complaint does not sufficiently allege that his statements were defamatory because it does not sufficiently allege that they were false. *See Internet Sols.*, 39 So. 3d at 1214 (quoting *Silver v. Levinson*, 648 So. 2d 240, 241–42 (Fla. 4th DCA 1994)) (recognizing that the court must determine whether the complaint states a cause of action for a specific tort in order to determine whether it can exercise jurisdiction over the defendant based on the commission of that tort within the state).

The complaint alleges that Baronowsky's statements about Dr. Maiorano's arrests were defamatory because they falsely implied that he was guilty or in danger of being convicted, when in fact the state had dropped the charges months before Baronowsky published his first webpage. As for Baronowsky's statements about the medical board disciplinary action against Dr. Maiorano, the complaint alleges that they were defamatory because Baronowsky exaggerated the underlying facts. The complaint also alleges that all of Baronowsky's statements were published with bad motives, specifically to interfere with Dr. Maiorano's

3

career and business opportunities, destroy his reputation, and cause injury to his personal and professional life.

The court did not err in ruling that these unrefuted allegations were sufficient to support the exercise of jurisdiction under section 48.193(1)(a)(2). The allegations were sufficient to create issues of fact as to whether Baronowsky's statements were defamatory even if some of them were technically true. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106–08 (Fla. 2008) (recognizing a cause of action for "defamation by implication" where "literally true statements are conveyed in such a way as to create a false impression"); *LRX, Inc. v. Horizon Assocs. Joint Venture*, 842 So. 2d 881, 886–87 (Fla. 4th DCA 2003) (reversing an order directing a verdict for the defendant on a claim for libel because, even if the defendant's statements about the plaintiff were true, there were issues of fact as to whether the defendant implied knowledge of additional defamatory facts and as to whether the defendant had an improper motive in publishing the statements); *Lipsig v. Ramlawi*, 760 So. 2d 170, 183 (Fla. 3d DCA 2000) (recognizing that "truth is only a defense to defamation when the truth has been coupled with good motive" and that both truth and good motives are issues for the jury). Baronowsky has not shown that no reasonable person would find his statements to be defamatory or that the court otherwise erred in finding the allegations sufficient to establish jurisdiction under the long-arm statute.

## Minimum Contacts

Under the second prong of the *Venetian Salami* analysis, the court was required to determine whether Baronowsky has sufficient minimum contacts with the state to satisfy federal due process requirements. *See Venetian Salami*, 554 So. 2d at 500–02; *Internet Sols.*, 39 So. 3d at 1206–07.

To satisfy due process, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). Put differently, the defendant's conduct and connection with the forum state must be such that "he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (citations omitted). Due process is satisfied if a defendant has "purposefully directed" his activities toward residents of the forum state and the litigation results from alleged injuries that "arise out of or relate

to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citations omitted).

In intentional tort cases, minimum contacts can be established based on a single tortious act, regardless of whether the defendant has any other contacts with the forum state, if the tortious act was aimed at the forum state and caused harm that the defendant should have anticipated would be suffered there. *See Calder v. Jones*, 465 U.S. 783, 789–90 (1984); *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1356 (11th Cir. 2013); *see also Walden v. Fiore*, 571 U.S. 277, 286–88 (2014) (explaining that a state can exercise jurisdiction over a nonresident intentional tortfeasor if his conduct connects him not only to the plaintiff but to the forum state).

In *Calder*, a resident of California sued residents of Florida for libel in a California state court. 465 U.S. at 784–86. The defendants' allegedly defamatory publication concerned a California plaintiff and plaintiff's California activities. The plaintiff's reputation as an entertainer was based in California. The publication cited sources in California, and was widely circulated in California, and the brunt of the plaintiff's alleged harm (emotional distress and injury to her professional reputation) was suffered in California. *Id.* at 788–89. "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Id.* at 789. The Supreme Court concluded that the California court's exercise of jurisdiction over the defendants did not violate due process because their actions were "expressly aimed" at California and they knew that the effects of their actions would be felt there. *Id.* at 789–90. Under those circumstances, the Court concluded that the defendants should have reasonably anticipated being haled into court in California to answer for their actions. *Id.* at 790 (citing *World-Wide Volkswagen*, 444 U.S. at 297).

In *Walden*, the Court further explained its holding in *Calder*:

> [In *Calder*,] [w]e held that California's assertion of jurisdiction over the defendants was consistent with due process. Although we recognized that the defendants' activities "focus[ed]" on the plaintiff, our jurisdictional inquiry "focuse[d] on 'the relationship among the defendant, the forum, and the litigation.'" Specifically, we examined the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story.

We found those forum contacts to be ample: The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by writing an allegedly libelous article that was widely circulated in the State; and the "brunt" of that injury was suffered by the plaintiff in that State. "In sum, California [wa]s the focal point both of the story and of the harm suffered." Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California."

The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, the defendants' intentional tort actually occurred in California. In this way, the "effects" caused by the defendants' article—*i.e.,* the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

571 U.S. at 286–88 (citations omitted).

The facts of this case are similar to the facts of *Calder*. Here, Baronowsky used information available through Florida police records and Florida medical board disciplinary records to make allegedly defamatory statements about Dr. Maiorano on his website. Baronowsky purposefully directed his statements to individuals who were patients of Dr. Maiorano, and who would have been Florida residents, by using Dr. Maiorano's name as his website's domain name, identifying Dr. Maiorano as an anesthesiologist in Hallandale and Fort Lauderdale, and asking the reader

if Dr. Maiorano was their doctor. Baronowsky knew that the "reputation-based effects" of his statements would be felt by Dr. Maiorano in Florida. *See Walden*, 571 U.S. at 287. And the reputational injury to Dr. Maiorano would not have occurred but for the fact that Baronowsky targeted his statements to Florida residents and Florida residents read those statements. *See id.* at 287–88. Just as in *Calder*, Baronowsky's intentional conduct expressly aimed at residents of this state and causing reputational harm in this state connected him to the state and constituted sufficient minimum contacts to support the exercise of personal jurisdiction consistent with due process. *See also Internet Sols.*, 39 So. 3d at 1216 n.11 (explaining that the due process analysis in an internet defamation case could include consideration of whether the defendant's allegedly defamatory website post "targeted" a Florida resident and was "purposefully directed" at Florida).

We find *Estes v. Rodin,* 259 So. 3d 183 (Fla. 3d DCA 2018), on which Baronowsky relies, to be distinguishable. There, nonresident defendants posted allegedly defamatory statements about the plaintiff, a Florida resident, in a closed Facebook group of addiction professionals. *Id.* at 188. The plaintiff sued the defendants in Florida, but the trial court dismissed the case for lack of personal jurisdiction, citing the defendants' lack of minimum contacts with the state. *Id.* at 190. In affirming the trial court's order, the appellate court concluded that the defendants' conduct did not connect them to Florida simply because they allegedly caused harm to a Florida resident. *See id.* at 193–96 (discussing *Calder* and *Walden*). The court discounted the claim that the defendants' comments could have caused reputational harm to the plaintiff in Florida because there was no proof that anyone in Florida had read them. *Id.* at 196. Thus, unlike in this case and *Calder,* there was no connection among the defendants' conduct, the reputational injury to the plaintiff, and the forum state.

The dissent in this case cites several federal cases in support, but most of the cited cases are more supportive of a finding of jurisdiction. For instance, in *Advanced Tactical Ordinance Systems, LLC v. Real Action Paintball, Inc.,* 751 F.3d 796, 803 (7th Cir. 2014), a trademark infringement case, the court stated that "minimum contacts" analysis for online activity depended upon whether the defendant purposely targeted residents of a specific state. Finding that the defendant did not, the court found that the trial court lacked jurisdiction over the defendant. In *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013), the court applied the traditional "minimum contacts" test for purposeful availment and affirmed the finding of jurisdiction over a website seller of counterfeit merchandise who sold products in Florida.

7

The dissent cites *Kabbaj v. Simpson*, 547 F. App'x 84, 88 (3d Cir. 2013), for the proposition that "[p]ersonal jurisdiction cannot lie [in Delaware] solely on the basis that [the non-resident's] internet postings may be accessed by individuals in Delaware." However, the court explained in the very next sentence that, "[i]nstead, [the plaintiff] needed to demonstrate that [the defendant] *purposefully availed himself* of conducting activity in Delaware *'by directly targeting [his postings] to the state*, knowingly interacting with residents of [Delaware] via [his postings], or through sufficient other related contacts.'" (citations omitted) (emphasis supplied). This is the exact type of activity in which the defendant in this case was engaged. Another case cited by the dissent, *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011), followed the *Calder* line of reasoning, applying it to the internet. While the court did state that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)," it continued by following the analysis in *Calder*. *Id.* "Consistent with the thrust of the *Calder*-derived analysis for specific jurisdiction in the internet context discussed above, in considering what 'more' could create personal jurisdiction for such activities, *courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." Id.* (emphasis supplied). And in *Blue Water International, Inc. v. Hattrick's Irish Sports Pub, LLC*, 2017 WL 4182405 (M.D. Fla. Sept. 21, 2017), an unreported federal district case having no precedential value, the plaintiff sued a Missouri bar for trademark infringement, even though it conducted no activities whatsoever in Florida and sold only food and liquor in Missouri. It was under that circumstance that the court found there was no long-arm jurisdiction nor minimum contacts jurisdiction. *Id.* at *3–4.

In all, the federal cases support the proposition that minimum contacts may be established where the defendant purposely targets Florida with his internet postings and the effect of this purposeful conduct causes harm in Florida. Thus, the cases are in alignment with *Calder* and a conclusion that there are sufficient minimum contacts to support jurisdiction.

Finding that both prongs of *Venetian Salami* are satisfied, we affirm the trial court's order finding that Baronowsky is subject to personal jurisdiction in Florida.

*Affirmed.*

8

KLINGENSMITH, J., concurs.
ARTAU, J., dissents with opinion.

ARTAU, J., dissenting.

Zero. That is the amount of contact which the defendant had with Florida. The majority concludes that the defendant purposefully directed his internet postings to Florida. I disagree. The internet postings were not directed at Florida. Instead, they were directed at the plaintiff. The mere fact that the plaintiff was identified in the internet postings as an anesthesiologist with offices in Florida cannot justify haling the defendant all the way from Nevada to answer a defamation action in a state with which he has no meaningful connection.

The defendant bought a domain name that incorporated the plaintiff's name and began using it in Nevada to publish a series of webpages containing allegedly defamatory statements about the plaintiff. The primary source of the information which the defendant published apparently came from his ex-wife as both the defendant and the plaintiff had been married at different times to the same spouse. On his website, the defendant identified the plaintiff as an anesthesiologist in Hallandale and Fort Lauderdale. The defendant stated that the plaintiff had been arrested and included screenshots of his booking photo and personal information. The defendant also stated that the plaintiff had been subjected to disciplinary action by the medical board. Besides identifying where the plaintiff practices medicine, the complaint against the defendant does not provide any allegations or evidence that the Nevada website advertised, sold any goods or services, or actively solicited viewers from Florida. It was merely a passive site that provided information, whether false or truthful, about a particular doctor who lives and works in Florida. Thus, the plaintiff is the only link between the defendant and Florida.

But the Supreme Court in *Walden v. Fiore,* 571 U.S. 277, 285 (2014), clarified that "the plaintiff cannot be the only link between the defendant and the forum" when applying the "effects test" established in *Calder v. Jones,* 465 U.S. 783, 789 (1984). As *Walden* explained:

> The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to [the forum state of] California, *not just to plaintiff* . . . . In this way, the 'effects' caused by the defendant's article . . . connected the

9

defendants' conduct to California, *not just to a plaintiff who lived there.*

*Walden*, 571 U.S. at 287-88 (emphasis added). *Walden* reasoned that "[e]ven though the defendants did not circulate the article themselves, they 'expressly aimed' 'their intentional, and allegedly tortious, actions' at California because they knew the National Enquirer 'ha[d] its largest circulation' in California, and that the article would 'have a potentially devastating impact' there." *Id.* at 287-88 & n. 7 (quoting *Calder*, 465 U.S. at 789-90).

To compare *Calder*, where the defendants had "expressly aimed" their allegedly tortious conduct at a state where the subject publication had its largest circulation, to the passive website posted in Nevada by the defendant who had no other link to Florida, is like comparing an isolated Facebook page posted by a Facebook account holder with the entire Facebook platform itself. Without more, we would not conclude that anything defamatory in an isolated Facebook page of an individual Facebook account holder would subject the poster to personal jurisdiction anywhere the post might be read. However, Facebook itself might be subject to personal jurisdiction well beyond the state where its one isolated account holder posted a social media page because the platform purposefully advertises and solicits accounts throughout the world.

The Third District in *Estes v. Rodin*, 259 So. 3d 183 (Fla. 3d DCA 2018), relied upon "a series of recent federal cases involving statements posted on electronic message boards and websites to demonstrate that the exercise of personal jurisdiction . . . would violate 'traditional notions of fair play and substantial justice' where the defendant's activity evidenced minimal affiliation with or connection to the forum state." *Id.* at 197 ("Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." (quoting *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014))); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013) (While sale of goods in Florida through a website may subject a defendant to personal jurisdiction, "[w]e are not saying that the mere operation of an interactive website alone gives rise to purposeful availment *anywhere* the website can be accessed."); *Kabbaj v. Simpson*, 547 F. App'x 84, 88 (3d Cir. 2013) ("Personal jurisdiction cannot lie solely on the basis that [the non-resident's] internet postings may be accessed by individuals in [the forum state]."); *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011) ("[P]osting allegedly defamatory comments or information on an

internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)."); *Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, Case No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *3-4 (M.D. Fla. Sept. 21, 2017) ("Subjecting [a nonresident defendant] to personal jurisdiction in Florida merely because a Floridian might view the [defendant's social media] pages 'offend[s] traditional notions of fair play and substantial justice'" and "impermissibly risk[s] subjecting a defendant to suit throughout the United States." (quoting *Advanced Tactical*, 751 F.3d at 803)).

The federal cases relied upon by the Third District in *Estes* are persuasive. Without more, it does not comport with due process to subject an individual who has exercised his or her First Amendment right to free expression by posting comments on an electronic message board or personal website to jurisdiction in any forum where the worldwide web is freely accessible, even if the posted comments are alleged to be defamatory. Therefore, I respectfully dissent.

*       *       *

***Not final until disposition of timely filed motion for rehearing.***