On Motion For Rehearing En Banc.

WARNER, J.
We grant appellee’s motion for rehearing en banc, vacate the prior opinion in this case, and substitute the following opinion in its place.[1]
Appellant, Mario Alvarez, as personal representative of the estate of Jose Ramon Alvarez, appeals a final judgment in favor of Cooper Tire Company in a products liability action. Alvarez complains that the trial court abused its discretion in limiting document discovery from Cooper Tire to those involving tires with the same or similar specifications. Two trial judges conducted multiple hearings and document reviews, both concluding that the limitations were appropriate. We find no abuse of discretion and affirm.
In December 2000, Abraham Calel was driving his 1994 Isuzu P15 pick-up truck on the Sawgrass Expressway with Jose Alvarez, sitting in the right-side passenger seat, and Rudy Velasquez, sitting in the middle. Neither the driver nor the passengers had on their seatbelts. Without warning, the right rear tire tread completely separated from the tire but the tire remained inflated. When this happened, the driver lost control of the pick-up truck, went off the highway, and the truck rolled over. Alvarez was partially ejected from the vehicle and ended up pinned underneath the truck. He died by asphyxiation. The other passenger was also killed in the accident. The driver survived.
In his capacity as personal representative of his brother’s estate, Mario Alvarez filed a lawsuit against Cooper Tire and others for the wrongful death of his brother, claiming that the tire on the truck was defective in its design and manufacture, thereby causing the accident and Jose’s death. Cooper denied the material allegations of strict liability and negligence and raised twelve affirmative defenses, including the seat belt defense, misuse of the subject tire, and defective vehicle design, among others.
The failed tire was a Cooper Trendsetter Steel Belted Radial Tire (Cooper Trendsetter SE, P205/70R14),[2] produced in *791 Tupelo, Mississippi during the 15th week of 1998 pursuant to Green[3] Tire Specification 3011. After institution of the lawsuit, Alvarez filed a multitude of discovery requests. Those requests demanded discovery of information and documents regarding all light truck tires manufactured by Cooper.
Cooper objected to the discovery based upon trade secret, burdensomeness, and that the plaintiff was entitled to discovery only for those tires which were substantially similar to the tire which was the subject of the lawsuit. Cooper maintained that those tires with the same or related GTS number, namely GTS 3011 and 3163, were the only tires substantially similar to the subject tire. Alvarez, however, claimed that the tires manufactured to other Green Tire Specifications were substantially similar in that all Cooper tires were manufactured using the same basic processes. Two of the main defects claimed by Alvarez’ tire expert constituted the lack of nylon overlays and a belt wedge, which the expert maintained were similar in all Cooper tires, thus making more than the same GTS number relevant for discovery purposes. Cooper, however, claimed that the differences in the processing and specifications made each GTS tire different. It had produced over 1,500,000 tires under the two GTS numbers which it claimed were substantially similar, and it had never been sued for tires involving either specification number.
We should point out that both sides have litigated many, many other tire defect cases involving Cooper tires. They have employed the same experts on many cases and have received document discovery in other cases. The experts are thoroughly familiar with the tire production methods, and the plaintiffs expert formulated opinions as to the cause of the tread separation of this particular tire without use of any documents from Cooper which were not produced in this case. The plaintiff, nevertheless, wanted documents both to show that Cooper had notice of a tread separation problem involving some tires with different GTS numbers and in later hearings admitted that he wanted documents for purposes of his claim for punitive damages.
The original trial judge, Judge Brunson, held a two day hearing in 2003. Although no live testimony was taken, the parties showed the judge a demonstration tire to explain tire construction and the manufacturing process. Both sides proffered expert affidavits and argued their respective implications. In a relatively short affidavit, Alvarez’ expert, Dennis Carlson, opined that much of what Cooper sought to protect as trade secrets was not confidential at all. He claimed that information such as chemical composition could be acquired by reverse engineering of the tire. He also set forth nine cases where he appeared as an expert involving tread separation of Cooper tires. With respect to those cases he stated that all were substantially similar in that a “failure occurs between the steel belts in the skim stock of the tires and the skim stock formula is the same for all light truck and passenger tires produced by Cooper.” He also stated that this failure mechanism was typical *792 through the industry with respect to steel belted radials.
The defense proffered a substantially more detailed affidavit explaining the manufacturing process. Lyle G. Campbell, a forensic consultant and former Director of Cooper’s Technical Relations Department, described the process by which tires are designed and manufactured and the basic components of a radial tire. He also explained that there are multiple causes and contributing factors for tire failure, including underinflation of tires and wear and tear. He stated that tires manufactured in accordance with different GTS numbers were different tires and explained why. The affidavit presented several examples of differences in various tires with different GTS numbers manufactured by Cooper. It also explained that permitting discovery of all radial tires as requested by plaintiff would require the production of hundreds of thousands of pages of documents. Finally, the affidavit explained in detail why much of this information would constitute trade secrets.
After this thorough hearing, and having taken additional time to review material submitted, Judge Brunson limited discovery “to the subject tire and substantially similar tires which this Court defines as tires designed and manufactured according to Green Tire Specification 8011 and its Related Specification 8163.” Cooper then produced over 1,500 documents regarding those tires.
In 2005, Alvarez filed a second motion to compel. He sought specific Cooper documents which had been produced in consolidated lawsuits in California, known as “the JCCP” (“Judicial Council Coordinated Proceeding”). This California proceeding permitted discovery to be coordinated between multiple lawsuits against Cooper, involving many different GT Specification tires, none of which included the tire specifications involved in this case. These documents were designated trade secret by the California judge. The parties obtained an order authorizing the Florida courts to inspect these documents for the purpose of this discovery dispute. Judge Brunson conducted a two-day hearing with extensive argument regarding the 139 documents. Some of the documents were reviewed during the hearing. The judge then reviewed the remaining documents. She denied discovery, concluding that the documents were protected by trade secret and plaintiff had not shown a reasonable necessity to require their production. None of the documents included the 3011 or 3163 tire specification numbers.
When this case was assigned to Judge Fine in 2005, Alvarez filed another motion to compel production of the JCCP documents. This time, he pointed out that these documents had been produced in an Arizona case and again claimed that they should be produced in this case, as he claimed that the tires in the Arizona case were virtually identical. Those tires, however, had different GTS numbers. Judge Fine held a hearing and then reviewed the documents himself. He denied production.
In 2007, Alvarez filed another motion, this time to vacate the original 2003 order limiting discovery to the two GTS numbers. He based his request on an order of Judge Kenneth Stern who had allowed additional production of documents in another Cooper Tire case pending in the Fifteenth Circuit in Palm Beach County. That case, however, did not involve GTS numbers 3011 or 3163. Judge Fine again held a hearing on the issue and again denied discovery, noting that he simply disagreed with Judge Stern’s ruling.
At trial, the plaintiffs expert testified that the tread separation was caused by a defective design as well as defects in the manufacturing process. As to the design defects, he testified that, within a reasonable degree of engineering certainty, the *793 inadequate design of the inner liner, the lack of belt edge wedge, and lack of nylon cap plies, caused or contributed to the tread belt separation. The tire would not have failed if it had an adequate liner, a belt edge wedge, and nylon cap plies. Based upon Carlson’s experience in the industry and with Cooper, he testified that the defendant knew before it manufactured the subject tire that the placement of a wedge and nylon cap plies in the tire substantially reduced incidents of tread belt detachments. As to manufacturing defects, the tire failed at approximately 25% of its design life, indicating that it was a very weak tire. These specific defects contributed to the tire failure: an inner liner that was thinner than the specifications; the lack of adhesion evidenced by the pattern liner marks; poor adhesion of the rubber to the steel cord shown by loose cables; and significant cohesion and adhesion defects.
Cooper defended the plaintiffs claims of product defect in five ways, presenting expert testimony on each theory: (1) the tire was not defective and did not need a belt wedge or nylon overlay, because it was not a performance tire; (2) the tread separation was caused by damage to the tire as a result of a prior impact, as well as by chronic underinflation and overloading; (3) the Isuzu truck was defectively designed leaving it unstable, causing it to roll over after the tread separation due to ov-ersteering, and the tread separation alone would not have caused the vehicle to go out of control; (4) the plaintiffs injuries and death were caused by the driver’s negligent loss of control over the vehicle; and (5) the decedent’s death was caused by his failure to wear a seatbelt which would have prevented his ejection from the vehicle and his death.
After a two week trial, the jury returned its verdict with a special interrogatory finding that the defendant did not place the subject tire on the market with a defect which was the legal cause of the death of the decedent.[4] On a motion for rehearing, counsel again argued that the discovery limitation was error. The court denied the motion, prompting this appeal.
On appeal, Alvarez argues that the trial court’s limitation of discovery to the “subject tire and substantially similar tires,” defined as “tires designed and manufactured according to Green Tire Specification 3011 and 3163,” was too narrow and deprived him of relevant discovery. We review orders regarding discovery under an abuse of discretion standard. See Philippon v. Shreffler, 33 So.3d 704, 708 (Fla. 4th DCA 2010) (quoting Gold, Vann & White, P.A. v. DeBerry, 639 So.2d 47, 56 (Fla. 4th DCA 1994)). A trial court is given wide discretion in dealing with discovery matters, and unless there is a clear abuse of that discretion, the appellate court will not disturb the trial court’s order. See Burroughs Corp. v. White Lumber Sales, Inc., 372 So.2d 122 (Fla. 4th DCA 1979). This deferential standard compels us to affirm in this case.
Florida Rule of Civil Procedure 1.280(b)(1), governing the “scope of discov *794 ery,” permits discovery of information “reasonably calculated to lead to the discovery of admissible evidence.” In products liability actions, when a plaintiff seeks discovery regarding other products manufactured by the defendant, Florida courts have uniformly held that the other products must be “substantially similar” to the subject product. See Nissan Motors Corp. v. Espinosa, 716 So.2d 279, 280 (Fla. 4th DCA 1998); Am. Med. Sys., Inc. v. Osborne, 651 So.2d 209, 210-11 (Fla. 2d DCA 1995); Caterpillar Indus., Inc. v. Keskes, 639 So.2d 1129, 1130 (Fla. 5th DCA 1994). The burden is on the plaintiff to demonstrate “substantial similarity.” See id.
Whether another product is “substantially similar” is a question for the trial court based upon all of the proofs presented. In this case, the trial judge reviewed the affidavits from the experts, saw a demonstration of the tire at the hearing, heard argument of counsel, and reviewed many of the documents. In fact, two trial judges reviewed documents and held multiple hearings on the issue, and each came to the same conclusion — that discovery was properly limited to tires with the subject GTS numbers. Based upon the record before us, we cannot find that the court abused its discretion.
The cases cited in support of its position by Alvarez are all distinguishable because of their procedural postures. In Cooper Tire & Rubber Co. v. Rodriguez, 2 So.3d 1027 (Fla. 3d DCA 2009), Cooper petitioned for a writ of certiorari to quash an order of the trial court granting limited production of documents over Cooper’s objection that only tires with the same GTS number were substantially similar. The court merely held that: “[W]e cannot say that the order is so broad that it compels the production of materials that cannot possibly lead to the discovery of admissible evidence.... [T]he ... order does not depart from the essential requirements of law.” Id. at 1031. Thus, the court upheld the trial court’s ruling on the discovery limitation under the highly deferential standard of review on a petition for certio-rari.
In Ex parte Cooper Tire & Rubber Co., 987 So.2d 1090 (Ala.2007), also cited by Alvarez for support, Cooper filed a petition for mandamus in the Alabama Supreme Court seeking to limit a trial court’s order requiring production of documents involving tires with GTS numbers different from the subject tire in litigation. Not only did the supreme court find that discovery matters are within the sound discretion of the trial court, but they also found that mandamus was a drastic remedy which would not issue in a discovery matter unless the right were clear and no reasonable basis for controversy existed about the right to such relief. Id. at 1101. Under Florida law, mandamus would not be an available remedy for a discovery dispute, nor could it be said that no controversy exists about the right to relief in this case.
Mann v. Cooper Tire Co., 33 A.D.3d 24, 816 N.Y.S.2d 45 (N.Y.App.Div.2006), also involves discovery of other GTS numbered tires but is procedurally distinguishable from this case. There, the trial court denied discovery, similar to how the trial court ruled in this case. Under New York law, “[wjhile discovery determinations rest within the sound discretion of the trial court, the Appellate Division is vested with a corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse.... ” Andon v. 302-301 Mott Street Assocs., 94 N.Y.2d 740, 745, 709 N.Y.S.2d 873, 731 N.E.2d 589, 592 (2000). Thus, the New York court determined de novo the limitations of discovery. Mann, 33 A.D.3d at 28-29, 816 N.Y.S.2d 45. Similarly, Petersen v. DaimlerChrysler Corp., 2007 WL 2391151 *795 (D.Utah 2007), which allowed discovery similar to that sought by Alvarez, can be characterized as the decision of a general magistrate, the trier of fact, not subject to de novo review by an appellate court. Our standard of review is not de novo, but rather we will affirm the trial court unless the court abused its discretion.
Looking to other courts, we find that in similar discovery disputes most courts have limited production to the GTS numbers which correspond to the tire which was the subject of the suit. See, e.g., Murphy v. Cooper Tire & Rubber Co., 2008 WL 5273548 (N.D.Fla.2008); Hajek v. Kumho Tire Co., 2010 WL 503044 (D.Neb.2010); Keene-McPeters v. Cooper Tire & Rubber Co., 303 Fed.Appx. 743 (11th Cir.2008); Bradley v. Cooper Tire & Rubber Co., 2006 WL 3360926 (S.D.Miss.2006). These are but a few of the cases coming to the same conclusion as the trial court did in this case. Granted, there are other cases which have allowed similar discovery, but this only shows that the issue is dependent upon the facts of each case and the evidence presented to the trial court.
This court adheres to review of discovery orders under an abuse of discretion standard. Trial judges must be afforded leeway in making the relevance and bur-densomeness decisions required in discovery disputes. Otherwise, the cost and burden of civil litigation will imperil its very existence.
In light of the foregoing and the record in this case, we affirm.
MAY, C.J., POLEN, STEVENSON, GROSS, TAYLOR, HAZOURI, DAMOORGIAN, CIKLIN, GERBER, LEVINE and CONNER, JJ., concur.

. A motion for rehearing en banc was pending when the author of the prior opinion retired from the court. The court has elected to continue with consideration of the opinion en banc, because the prior opinion conflicts with Nissan Motors Corp. v. Espinosa, 716 So.2d 279, 280 (Fla. 4th DCA 1998), and expresses an unprecedented analysis of discovery that limits the discretion of the trial court, which the court does not endorse.

. In this designation, ‘'Trendsetter” is the brand name for the tire; "P" signifies that the *791 tire is a passenger tire, rather than a light truck ("LT") tire; “R” signifies radial tire; 14 is the diameter in inches of the wheel on which the tire is designed to be mounted.

. The dimensions, components and weight specifications for a particular tire model are stated in what is commonly referred to in the tire industry as a "Green Tire Specification” (GTS). "Green" refers to the uncured tire prior to the heating process that bonds the components together.

. In closing argument, defense counsel argued that the jury could answer the question "no” for any of three reasons: 1) the tire was not defective; 2) the accident was caused by the defective vehicle, since expert testimony established that the tread separation would not cause the driver to lose control of the vehicle; or, 3) failure to wear a seatbelt caused the death of the decedent. Because of the way the case was argued to the jury, the jury could have arrived at the verdict it did, even if it found that the tire was defective, finding that the legal cause of death was the defective vehicle or the decedent's failure to wear a seatbelt. See Barth v. Khubani, 748 So.2d 260 (Fla.1999). Since the discovery issue affects only the issue of whether the tire was defective, the issue may not have been properly preserved, although the appellee does not make this argument directly.