# Third District Court of Appeal

## State of Florida

Opinion filed October 10, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1201
Lower Tribunal No. 16-13578
_____


**Christy Lee Estes, etc., et al.,**
Appellants,

vs.

**Jennifer Rodin, et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Rodolfo A. Ruiz, Judge.

Coral Reef Law Offices, P.A., and Lori K. Weems and Nathan D. Clark, for appellants.

Wicker Smith O'Hara McCoy & Ford, P.A., and Alyssa M. Reiter (Fort Lauderdale), for appellee Jennifer Rodin; Mintzer, Sarowitz, Zeris, Ledva & Meyers, LLP, and Sean M. McCleary and Addison J. Meyers, for appellee Robert Nicholl; Cole, Scott & Kissane, P.A., and Melinda S. Thornton, for appellee David Brown.

Almazan Law, P.A., and Lianet Rodriguez, Johanna Castellon-Vega, and Alexander P. Almazan, for Brad Lamm as amicus curiae.

Before LAGOA, LOGUE, and SCALES, JJ.

LAGOA, J.

Appellants Christy Lee "Cali" Estes ("Estes") and The Addictions Academy, LLC ("The Addictions Academy"), a Florida limited liability company (collectively, "Appellants"), appeal from the trial court's order granting Appellees Jennifer Rodin ("Rodin"), Robert Nicholl ("Nicholl"), and David Brown's ("Brown") (collectively, "Appellees") motions to dismiss Appellants' Second Amended Complaint for lack of personal jurisdiction with prejudice. For the reasons set forth below, we affirm the order as to all Appellees.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Estes is an addiction specialist who practices intervention, treatment, and coaching, and trains other individuals to do the same in Miami-Dade County. In 2013, Estes established The Addictions Academy, which provides addiction treatment services in person and via the internet both in the United States and internationally. Shortly thereafter, the National Association for Alcoholism and Drug Abuse Counselors ("NAADAC") granted The Addictions Academy's application for "Approved National Education Provider" status.

Appellees also practice in the addiction treatment field. Rodin is a resident of Orange County, California, and founder of Hope Family Interventions, which is headquartered in California. Nicholl is a resident of Orange County, California,

2

and owner of Celebrate a New Life, Inc., which is based in California. Nicholl is also an independent contractor for Hope By The Sea, Inc., a company that does not engage in any business in Florida. Brown is a resident of Johnson County, Kansas, whose sole place of business, Avenues to Recovery Inc., is located in Kansas. Appellees each advertise their services on various websites on the Internet.

Between May 13 and May 25, 2015, Estes and Appellees belonged to a closed Facebook group with over 4000 members titled "Addiction Professional Network Group" (the "closed Facebook group"). On two comment threads in the closed Facebook group, Appellees, as well as Brad Lamm,[1] Ray Estefania, David Wolan, and Edward Saunders (the "codefendants"), posted increasingly combative comments questioning Appellants' credentials and addiction services business, as well as Estes's character. After these comment exchanges, Estes was blocked from accessing the closed Facebook group, but re-accessed the group by borrowing her friend's Facebook login information.

On May 27, 2016, Appellants filed their complaint against Appellees, the NAADAC, and the other codefendants, alleging counts of slander per se against Appellees for their "false and malicious statements" in the closed Facebook group. Appellees each moved to dismiss the complaint as to them individually for lack of personal jurisdiction. On April 10, 2017, Appellants filed their verified Second

---

[1] Brad Lamm filed a brief as amicus curiae in the instant appeal.

3

Amended Complaint,[2] which amended their counts of slander per se to defamation per se and added counts for injunctive relief and violations of Florida's Antirust Act against Appellees. Appellees renewed their motions to dismiss for lack of personal jurisdiction with supporting sworn affidavits.

**Rodin**

In her sworn affidavit, Rodin attested that she: (1) had "virtually no ties, connections or ongoing obligations within . . . Florida"; (2) did "not visit Florida regularly"; (3) did "not have any business associates in Florida," and did "not refer [her] clients to treatment providers in Florida"; (4) did "not have any contracts to which any Florida resident or business entities are parties[] [n]or . . .call for payment or performance . . . in Florida"; (5) did "not own a business, corporation, real property, bank account or anything in . . . Florida" nor advertise in Florida; and (6) did "not perform any acts in Florida" concerning Appellants' allegations against her. Rodin only identified one occasion where she visited Florida in the last seven years, which occurred when she dropped off in Florida a client who resided in New York City and then returned to California the same day.

**Nicholl**

---

[2] Appellant's Second Amended Complaint also asserted various counts of defamation, tortious interference, civil conspiracy, breach of fiduciary duty, breach of contract, injunctive relief, and violations of Florida's Antitrust Act against Appellees' codefendants in the case.

4

In his sworn affidavit, Nicholl attested that: (1) the companies he owned and worked for did not "engage in any business," "solicit patients," "conduct interventions" in Florida, or "maintain, own or operate a business" or office in Florida; (2) he did "not operate, conduct, engage in, or carry on, a business venture in . . . Florida"; (3) he did "not solicit patients or clients for [his] business" nor conduct an intervention in Florida; (4) he was not affiliated with websites specifically targeting patients in Florida; and (5) he did "not own real property or maintain a bank account" nor advertise in Florida.

**Brown**

In his sworn affidavit, Brown attested that he: (1) did "not own a business or [c]orporation"; (2) he did not maintain a registered agent, office, or license to conduct business in Florida; (3) did not own real property or a bank account in Florida; (4) did not advertise in Florida nor provide services to patients in Florida; (5) had "maintained only isolated contact with individuals and entities domiciled in . . . Florida"; and (6) did not perform any acts in Florida with respect to the allegations against him.

In response to Appellees' motions to dismiss and affidavits, Estes filed her own sworn counter-affidavit with the attached comment threads from the closed Facebook Group. Estes attested that she had seen the posts, had privately messaged Appellees "to halt their barrage of social media attacks," and had

5

suffered reputational harm in numerous ways, including the loss of a book deal, denial and termination of certifications in the addiction services field (including the NAADAC), and loss of business associates.[3] Estes further attested that some of the members in the closed Facebook group were addiction industry professionals located in Florida, but did not identify any Florida resident that accessed or viewed the allegedly defamatory comments other than herself. Estes's counter-affidavit also did not contradict or dispute the assertions in Appellees' affidavits.

On July 24, 2017, the trial court held a hearing on Appellees' motions to dismiss. Upon its conclusion, the trial court found that Appellants had satisfied the first prong of the personal jurisdiction test established in Venetian Salami v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989), i.e., the Second Amended Complaint alleged sufficient jurisdictional facts (the alleged tortious acts) to bring the action within Florida's long-arm statute. The trial court, however, granted each Appellee's motion to dismiss with prejudice as the trial court found that Appellants failed to satisfy the second prong of Venetian Salami, i.e., whether each Appellee possessed sufficient minimum contacts with Florida to satisfy constitutional due process requirements. This timely appeal ensued.

---

[3] A review of the Second Amended Complaint reveals that much of the harm Appellants allege is based on the alleged actions—e.g., counts of tortious interference, civil conspiracy, and defamatory statements made outside the closed Facebook group—of the codefendants not before us in this appeal.

## II. STANDARDS OF REVIEW

We review de novo a trial court's ruling on a motion to dismiss for lack of personal jurisdiction. Kingland Estates, Ltd. v. Davis, 170 So. 3d 825, 827 (Fla. 3d DCA 2015); Renaissance Health Publ'g., LLC v. Resveratrol Partners, LLC, 982 So. 2d 739, 741 (Fla. 4th DCA 2008). We further review a denial of a request for jurisdictional discovery for an abuse of discretion. See Alvarez v. Cooper Tire & Rubber Co., 75 So. 3d 789, 793 (Fla. 4th DCA 2011) ("A trial court is given wide discretion in dealing with discovery matters, and unless there is a clear abuse of that discretion, the appellate court will not disturb the trial court's order.").

## III. ANALYSIS

It is well-established that two inquires must be made in determining whether a court may exercise personal jurisdiction over a defendant under Florida's long-arm statute. "'First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient "minimum contacts" are demonstrated to satisfy due process requirements.'" Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989) (quoting Unger v. Publisher Entry Serv., Inc., 513 So. 2d 674, 675 (Fla. 5th DCA 1987)). The constitutional minimum contacts prong "is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement" than the long-arm statute.

7

Execu-Tech Bus. Sys. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000). Both prongs must be satisfied in order to exercise personal jurisdiction over a non-resident defendant. Rollet v. de Bizemont, 159 So. 3d 351, 356 (Fla. 3d DCA 2015).

To challenge the allegations of a complaint concerning jurisdiction or to raise a contention of minimum contacts, a defendant must file a legally sufficient affidavit in support of his or her position. Venetian Salami, 554 So. 2d at 502; Rollet, 159 So. 3d at 356. The burden then shifts to the plaintiff to prove via counter-affidavit "the basis upon which jurisdiction may be obtained." Venetian Salami, 554 So. 2d at 502. In most cases, the affidavits can be harmonized. However, if the affidavits cannot be reconciled, a limited evidentiary hearing is required in order for the trial court to determine the jurisdictional issue. Venetian Salami, 554 So. 2d at 503.

A. Sufficient Jurisdictional Facts Under Florida's Long-arm Statute

We first discuss the trial court's finding that Appellants alleged sufficient jurisdictional facts to bring Appellees within the ambit of Florida's long-arm statute. Based on our review of the record, we conclude that Appellants failed to meet the first prong of Venetian Salami's personal jurisdiction analysis to the extent that the defamation claims are based on Estes herself accessing the allegedly defamatory postings.

Section 48.193(1)(a), Florida Statutes (2017)—the portion of Florida's long-arm statute relevant here—provides that:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . . .
> 2. Committing a tortious act within this state.

§ 48.193(1)(a)2., Fla. Stat. We "are required to strictly construe the long-arm statute." Seabra v. Int'l Specialty Imps., Inc., 869 So. 2d 732, 733 (Fla. 4th DCA 2004); accord Blumberg v. Steve Weiss & Co., 922 So. 2d 361, 363 (Fla. 3d DCA 2006). The Florida Supreme Court has held that a defendant need not be physically present in Florida to commit a tortious act under the long-arm statute, as committing a tortious act can occur when a nonresident defendant posts electronic communications on a website accessible and accessed in Florida. Internet Sols. Corp. v. Marshall, 39 So. 3d 1201, 1208 (Fla. 2010) (holding that "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed (or 'published') in Florida"); see also Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002). The Florida Supreme Court has further concluded that "the nature of the Web . . . is fundamentally different from a telephone call, an e-

9

mail, or a letter" as a post on a website is "accessible by anyone with Internet access worldwide." Internet Sols., 39 So. 3d at 1216; accord Casita, L.P. v. Maplewood Equity Partners L.P., 960 So. 2d 854, 857 (Fla. 3d DCA 2007) ("Under Florida law, the tort of defamation is committed in the place where it is published.").

Nevertheless, in order for a defamatory statement to become actionable, the statement must be published or communicated to a third person. See Am. Airlines, Inc. v. Geddes, 960 So. 2d 830, 833 (Fla. 3d DCA 2007). "[S]tatements made to the person alleging the defamation do not qualify." Id. In the instant case, Estes asserted in her affidavit that she accessed in Florida each Appellee's allegedly defamatory statements in the closed Facebook group, first on her own personal account, and then through the account of her friend, also a Florida resident. Estes further attested that other Florida residents are members of this Facebook group. To the extent that Appellants allege a defamation based on Estes's own accessing of the allegedly defamatory posts in Florida, these allegations lack the essential element of publication and therefore fail to constitute a tortious act under Florida's long-arm statute section 48.193(1)(a)(2).

Accordingly, we conclude that the Appellants failed to allege sufficient jurisdictional facts to satisfy section 48.193(1)(a)(2) with respect to the allegedly defamatory posts accessed by Estes, herself, in Florida. However, to the extent

10

that Appellants alleged in their Second Amended Complaint that the allegedly defamatory posts were accessed by third parties in Florida, we cannot conclude at this stage that they fail to meet the requirement of the long-arm statute. Although these allegations are conclusory, we must take them as true, as the Appellees' affidavits filed below did not challenge that jurisdictional allegation. As such, we find that those allegations bring Appellees into the ambit of Florida's long-arm statute for purposes of a motion to dismiss. However, as the Florida Supreme Court has emphasized, whether Florida's long-arm statute applies to confer personal jurisdiction is only "the first step of the inquiry." Internet Sols., 39 So. 3d at 1216. "The second step is a more restrictive one, precluding suit in any situation where the exercise of jurisdiction over the nonresident defendant would violate due process." Id.

B. Insufficient Minimum Contacts to Satisfy Federal Due Process Requirements

We now turn to the second prong of Venetian Salami, i.e., whether each Appellee individually has sufficient minimum contacts with Florida to satisfy constitutional due process requirements. "The strictures of the Due Process Clause forbid a state court to exercise personal jurisdiction over [a defendant] under circumstances that would offend 'traditional notions of fair play and substantial justice.'" Asahi Metal Indus. Co., v. Superior Court of Cal., Solano Cty., 480 U.S.

11

102, 113 (1987) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945));

accord Wendt, 822 So. 2d at 1257. "Due process limits on the State's adjudication authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." Walden v. Fiore, 571 U.S. 277, 284 (2014). "A state may exercise specific jurisdiction only over a defendant who has certain 'minimum contacts' with the state." Caiazzo v. Am. Royal Arts Corp., 73 So. 3d 245, 251 (Fla. 4th DCA 2011) (quoting Int'l Shoe, 326 U.S. at 316). "'The requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state.'" Renaissance Health, 982 So. 2d at 742 (quoting Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 719 (Fla. 4th DCA 1998)). "'[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" Burger King Corp v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). In other words, as the United States Circuit Court of Appeals for the Eleventh Circuit has stated, we must examine in specific personal jurisdiction cases:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of

12

conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013). We address each factor separately.

1. *"Arise out of or Relate to" the Defendant's Contacts with the Forum*

First, "'a fundamental element of the specific jurisdiction calculus is that plaintiff's claim must "arise out of or relate to" at least one of defendant's contacts with the forum.'" Fraser v. Smith, 594 F.3d 842, 850 (11th Cir. 2010) (quoting Oldfield v. Pueblo de Bahia Lora, S.A., 558 F.3d 1210, 1222 (11th Cir. 2009)). "In other words, 'our inquiry must focus on the direct causal relationship among "the defendant, the forum, and the litigation."'" Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

In the instant case, Appellants alleged that Appellees committed intentional torts against Appellants, a Florida resident and a Florida limited liability company, by posting allegedly defamatory statements in a closed Facebook group. As noted earlier, the posting of an allegedly defamatory electronic communication on a website accessible and accessed in Florida can constitute a tortious act in Florida sufficient to satisfy Florida's long-arm statute. Although satisfying Florida's long-arm statute is not automatically dispositive of the "arise out of or relate to" prong,

13

we conclude that, although limited, there is a direct causal relationship between Appellants' intentional tort claims and Appellees' contacts with Florida. Thus, the first prong of the Due Process analysis has been met.

2. *Purposeful Availment*

Under the second prong, the nonresident defendant must have "'purposefully availed' [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws." Louis Vuitton, 736 F.3d at 1355. In the context of intentional torts, there are two tests to determine whether purposeful availment has occurred: the "effects test" articulated in Calder v. Jones, 465 U.S. 783 (1984), and the traditional analysis. Louis Vuitton, 736 F.3d at 1356.

(a) Purposeful Availment Under the Calder "Effects Test"

"Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state," where "the tort: '(1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state.'" Id. (quoting Licciardello v. Lovelady, 544 F.3d 1280, 1286 (11th Cir. 2008)). The United States Supreme Court subsequently clarified that in determining whether the tortious act was expressly aimed at the forum state under the Calder effects test, a "**mere injury to**

**a forum resident is not a sufficient connection to the forum**.” Walden, 571 U.S. at 289-90 (emphasis added) (“Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State.”). Thus, the “proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant’s conduct connects him to the forum in a meaningful way.” Id. at 290.

> [T]he plaintiff cannot be the only link between the defendant and the forum. . . . To be sure, a defendant’s contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But the defendant’s relationship to the plaintiff, standing alone, is an insufficient basis for jurisdiction.

Id. at 285-86; see also Aviation One of Fla., Inc. v. Airborne Ins. Consultants (PTY), Ltd, 722 F. App’x 870, 880 (11th Cir. 2018).

We find that none of the Appellees purposefully availed themselves of the privilege of conducting activities within Florida. In her sworn affidavit, Rodin attested that: (1) she had “virtually no ties, connections, or ongoing obligations within . . . Florida”; (2) she did not advertise in Florida; (3) she did not own real property or a bank account in Florida; (4) she did not have contracts with any Florida entities or residents; and (5) she only had visited Florida once in the last seven years to drop off one client who resided in New York and worked with Rodin in California and New York.[4] In his sworn affidavit, Nicholl attested that:

---

[4] Rodin averred that she returned home to California on the same day after

15

(1) neither company he worked for engaged in business or solicited patients in Florida; (2) he did not "maintain, own, or operate a business" or office in Florida; (3) he did not have or solicit patients in Florida; and (4) he did not own real property or maintain a bank account in Florida. In his sworn affidavit, Brown attested that: (1) he did not own or maintain a business or registered agent in Florida; (2) he did not have a license to conduct business in Florida; (3) he did not own real property or maintain a bank account in Florida; (4) he did not advertise in Florida; (5) he had maintained only isolated contacts with Florida residents and entities; and (6) he did not provide services to patients in Florida. In her counter-affidavit, Estes failed to contest any of these statements. Thus, because the only link between Appellees and Florida is the alleged injury to Appellants, Appellants failed to satisfy the purposeful availment prong of the due process analysis.

Appellants contend that Florida cases on intentional torts arising in the Internet context are sufficient to establish personal jurisdiction over Appellees. We find these cases inapposite with respect to whether a nonresident defendant has sufficient minimum contacts with Florida to satisfy constitutional due process requirements. In Price v. Kronenberger, 24 So. 3d 775 (Fla. 5th DCA 2009), the nonresident defendant sent allegedly defamatory statements in an email to members of a veteran's association claiming that the plaintiff, a Florida resident,

---

dropping off the client in Florida.

16

went to an unaccredited law school. Id. at 776. The email was addressed to association members generally and did not target Florida residents as recipients, but was received by members throughout the country including some who lived in Florida. Id. The Fifth District Court of Appeal concluded that "[a] complaint that alleges a nonresident committed a tortious act based on communications directed into Florida telephonically, electronically, or in writing sufficiently alleges personal jurisdiction under [Florida's long-arm statute] section 48.193(1)(b)." Id. Because the complaint in Price alleged that the nonresident defendant sent the email to various members of the association, including some living in Florida, the Fifth District Court of Appeal found that the complaint alleged sufficient jurisdictional facts to bring the action within Florida's long-arm statute. Id. The Fifth District Court of Appeal further found that "[b]y publishing the e-mail in Florida and directing the defamatory comments at a Florida resident, [the defendant] established minimum contacts with [Florida]." Id. This conclusion, however, was reached without any analysis regarding whether the exercise of specific personal jurisdiction over a nonresident defendant would violate constitutional due process. We therefore conclude that Price is not persuasive on the question of minimum contacts, as the court in Price conflated the two prongs necessary for a court to exercise personal jurisdiction over a nonresident defendant into a single analysis. As the Florida Supreme Court has recognized, "the federal

17

due process analysis is *not* built into Florida's long-arm statute." Internet Sols., 39 So. 3d at 1207 (emphasis in original). "The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents *does not* automatically satisfy the due process requirements of minimum contacts." Id. (emphasis added) (quoting Venetian Salami, 554 So. 2d at 502). Because the court in Price did not separately analyze the constitutional due process requirements,[5] we find Price is inapplicable to the instant case.

Appellants also rely on Renaissance Health, where the Fourth District Court of Appeal held that "defamatory comments posted in an internet chat room 'that were targeted to Florida residents' . . . in Florida were electronic communications that fell within [the long-arm statute]," satisfying the first prong of the Venetian Salami analysis. 982 So. 2d at 742 (quoting Becker v. Hooshmand, 841 So. 2d 561, 563 (Fla. 4th DCA 2003)). The Fourth District also concluded that the requirements of due process had been met. In that regard, the court in Renaissance Health noted that the purpose of defendants' defamatory comments "was to convince consumers to purchase the defendants' products and not the plaintiff's," and found that the $2,101.83 in sales—2.4% of the defendants' total gross domestic sales—was "[s]uch commercial activity within Florida . . . sufficient to

---

[5] The Florida Supreme Court in Internet Solutions Corp. v. Marshall, 39 So. 3d 1201, 1216 (Fla. 2010), made clear that whether Florida's long-arm statute applies to confer personal jurisdiction is only the "first step of the inquiry" in determining whether a court may exercise personal jurisdiction over a nonresident defendant.

18

subject the defendants to jurisdiction [in Florida]." Id. (noting that "where a defendant disparages a competitor's products to enhance its own commercial sales in a state where the competitor has its corporate headquarters, the defendant could 'reasonably anticipate being haled into court there'" (quoting Calder, 465 U.S. at 790)). The Fourth District specifically distinguished its decision in Renaissance Health from cases involving "passive websites not designed to market products in the purported forum state." Id.

Similarly, in Caiazzo, 73 So. 3d at 257, the defendant's allegedly defamatory statements sought "to enhance [his] own commercial sales in Florida," and the record established that the defendant's sales from his website to Florida addresses for a period of four years were 4.35% of his total sales and worth approximately $100,000. While the court in Caiazzo found that there was personal jurisdiction over the defendant, it noted that the "allegations [were] very barebones and probably come as close to being inadequate for jurisdiction as possible without actually crossing that line." Id. at 258. In both Renaissance Health and Caiazzo, the defendant's allegedly defamatory statements were aimed at increasing sales within Florida, thereby satisfying the requirement that the defendant have created jurisdictionally relevant contacts with Florida other than simply the defendant's relationship with the plaintiff. The record here fails to contain any such facts.

Finally, in <u>Tobinick v. Novella</u>, No. 9:14-CV-80781, 2015 WL 328236 (S.D. Fla. Jan. 23, 2015), the court found that a nonresident defendant's publication of allegedly defamatory statements on a website he edited and contributed to caused financial harm to the plaintiff's business in Florida, and thereby satisfied minimum contacts. <u>See</u> <u>id.</u> at *9. In its analysis, the court applied the <u>Calder</u> effects test as set forth by the Eleventh Circuit in <u>Louis Vuitton</u> and <u>Licciardello</u>. <u>See</u> <u>id.</u> at *7-9. <u>Tobinick</u>, however, did not address the Supreme Court's decision in <u>Walden</u> clarifying the <u>Calder</u> effects test. As such, we find <u>Tobinick</u> incompatible with <u>Walden</u> and thus unpersuasive.

In the instant case, none of the Appellees offer their addiction treatment services in Florida or otherwise have business contacts within Florida. None of Appellees' allegedly defamatory comments sought to direct business to their practices. The closed Facebook group is geared specifically for other addiction treatment professionals, not the general public, and was not designed to market Appellees' services into Florida. Indeed, the closed Facebook group is a passive website. None of the Appellees owned the website where the comments were posted, as they are mere contributors to the closed Facebook group. Appellees further attested that none of the websites associated with their services direct their advertising into Florida. While Appellants claim they suffered "reputational harm" as a result of Appellees' comments, Estes failed to identify any Florida resident

20

who read these comments and consequently discontinued business relations with her or The Addictions Academy in her counter-affidavit. Cf. Walden, 571 U.S. at 287 ("However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons.").

(b) Purposeful Availment Under the "Traditional Analysis"

Courts have also applied a traditional purposeful availment analysis in the context of intentional torts to determine whether a nonresident defendant possesses sufficient minimum contacts with the forum state. See, e.g., Louis Vuitton, 736 F.3d at 1356 (noting that "courts have applied the traditional minimum contacts test for purposeful availment analysis in lieu of, or in addition to, the 'effects test' in cases involving . . . intentional torts"). Under the traditional test, courts "identify all contacts between a nonresident defendant and [Florida]" and determine "whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." Id. at 1357 (citing U.S. S.E.C. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997)).

Here, the only identifiable contact that Appellees have with the state of Florida is their interactions with Estes on the comment threads in the closed Facebook group. As discussed in the previous subsection, we find that Appellants'

21

cause of action arises out of Appellees' contact with Estes. A review of the record establishes, however, that none of the Appellees purposefully availed themselves of the privileges of conducting business within Florida such that they should reasonably anticipate being haled into a Florida court. Appellees do not conduct any type of business or service in Florida, advertise in Florida, own any real property in Florida, or maintain any bank accounts in Florida. Compare Aviation One, 722 F. App'x at 881 (finding that a nonresident corporation did not have sufficient minimum contacts with Florida where it "did not solicit business in Florida, did not insure property or a risk in Florida, and had no direct contact" with the resident plaintiff before the incident), with Louis Vuitton, 736 F.3d at 1357-58 (finding that the nonresident defendant purposefully availed himself to Florida where he "purposefully solicited business from Florida residents through the use of at least one fully interactive, commercial website, . . . received orders from multiple Florida residents to ship goods into Florida[,] . . . [and] shipped those goods . . . into Florida"), and Carrillo, 115 F.3d at 1545-46 (finding that the nonresident corporation purposefully availed itself to the United States where it purchased advertisements numerous times in a widely circulated, complimentary airlines magazine and set up bank accounts to purchase unregistered securities). Moreover, Appellants failed to identify any other contact that Appellees had with Florida besides Estes or to otherwise rebut Appellees' jurisdictional attestations.

Because Appellees' allegedly defamatory statements about Appellants are the only contact between Appellees and Florida, we conclude that Appellees did not purposefully avail themselves of the privilege of conducting activities within Florida. Accordingly, we find Appellants have failed to establish that Appellees have sufficient minimum contacts to satisfy either the "effects test" analysis under Calder and Walden or a traditional purposeful availment analysis.

3. *"Traditional Notions of Fair Play and Substantial Justice"*

While our finding that none of the Appellees purposefully availed themselves to the privilege of conducting activities within Florida is sufficient to affirm the trial court's order, we further address whether the exercise of personal jurisdiction over Appellees would satisfy the third prong of the due process analysis, i.e., "traditional notions of fair play and substantial justice." The relevant factors for consideration are: "(1) 'the burden on the defendant'; (2) 'the forum's interest in adjudicating the dispute'; (3) 'the plaintiff's interest in obtaining convenient and effective relief'; and (4) 'the judicial system's interest in resolving the dispute.'" Louis Vuitton, 736 F.3d at 1358 (quoting Licciardello, 544 F.3d at 1288). As the Supreme Court has recently stated, the primary concern in assessing personal jurisdiction under the prong of "traditional notions of fair play and substantial justice" is the burden on the defendant. Bristol-Myers Squibb Co. v. Superior Court of Cal., 137 S. Ct. 1773, 1780 (2017); see also Flatirons Bank v.

23

Alan W. Steinberg Ltd. P'ship, 233 So. 3d 1207, 1211 n.7 (Fla. 3d DCA 2017) (citing Bristol Meyers in recognizing the "recent trend" in the Supreme Court's jurisprudence on specific jurisdiction "to limit the reach of a court over a defendant where the activity has minimal affiliation with or connection to the forum state").

Appellees rely on a series of recent federal cases involving statements posted on electronic message boards and websites to demonstrate that the exercise of personal jurisdiction in the instant case would violate "traditional notions of fair play and substantial justice" where the defendant's activity evidenced minimal affiliation with or connection to the forum state. We find these cases persuasive. "Having an 'interactive website' . . . should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc., 751 F.3d 796, 803 (7th Cir. 2014); accord Louis Vuitton, 736 F.3d at 1357-58 (holding that "the mere operation of an interactive website alone" does not "give[] rise to purposeful availment *anywhere* the website can be accessed"); see also Kabbaj v. Simpson, 547 F. App'x 84, 88 (3d Cir. 2013) (finding that it "would not comport with due process" to base personal jurisdiction solely on a non-resident's allegedly defamatory comments on electronic message boards); Shrader v. Biddinger, 633 F.3d 1235, 1241 (10th Cir. 2011) ("The maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even

24

for actions relating to the site, simply because it can be accessed by residents of the forum state. . . . Similarly, posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)." (citations omitted)); Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC, Case No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *3-4 (M.D. Fla. Sept. 21, 2017) (finding that subjecting a nonresident business that advertised on social media "to personal jurisdiction in Florida merely because a Floridian might view the [defendant's social media] pages 'offend[s] traditional notions of fair play and substantial justice'" and would "impermissibly risk subjecting a defendant to suit throughout the United States" (quoting Advanced Tactical, 751 F.3d at 703)).

The record evidence establishes that the exercise of personal jurisdiction over each Appellee would violate traditional notions of fair play and substantial justice. Rodin and Nicholl both reside in Orange County, California, and Brown resides in Johnson County, Kansas. Brown and Nicholl attested that their addiction therapy practices are centered on their respective geographic locations, and Rodin attested that she does not practice in Florida. As discussed above, none of the Appellees have relevant contacts with Florida other than the allegedly defamatory comments on the threads in the closed Facebook group. While Florida may have a strong interest in affording its residents a forum to obtain relief from

25

intentional torts and it would be more convenient for Appellants to litigate in Florida, the burden on Appellees to litigate in Florida outweighs these factors. Accordingly, we find that the trial court did not err in granting each Appellee's motion to dismiss, as none of the Appellees have sufficient minimum contacts to satisfy due process requirements.

C. No Error in Denying Limited Jurisdictional Discovery

Finally, Appellants argue that the trial court erred by not permitting them to conduct limited jurisdictional discovery at the eleventh hour. Generally, "[a] trial court is given wide discretion in dealing with discovery matters, and unless there is a clear abuse of that discretion, the appellate court will not disturb the trial court's order." Alvarez, 75 So. 3d at 793. Once a defendant files an affidavit contesting personal jurisdiction, the burden then shifts to the plaintiff to demonstrate the grounds for the court to exercise jurisdiction over the defendant via counter-affidavit or other sworn affidavit. See Venetian Salami, 554 So. 2d at 502; Volkswagen Aktiengesellschaft v. Jones, 227 So. 3d 150, 157 (Fla. 2d DCA 2017). "If the material facts alleged in the opposing affidavits conflict with one another, the trial court is required to hold an evidentiary hearing to resolve the jurisdictional issue." Redwood Recovery Servs. v. Addle Hill, Inc., 140 So. 3d 1037, 1040 (Fla. 3d DCA 2014) (footnote omitted).

The record before us shows that Estes's counter-affidavit failed to demonstrate any grounds to exercise jurisdiction over Appellees after each Appellee filed their own legally sufficient sworn affidavit. Indeed, the parties' affidavits are not in conflict and can therefore be reconciled. Appellants, however, urge us to consider the allegations in their verified Second Amended Complaint as directly in conflict with Appellees' affidavits. While a sworn complaint may act as a substitute for a counter-affidavit, see Castillo v. Concepto Uno of Miami, Inc., 193 So. 3d 57, 60 (Fla. 3d DCA 2016), the sworn complaint must constitute legally sufficient evidence to be considered by the court, see Toyos v. Helm Bank, USA, 187 So. 3d 1287, 1290 (Fla. 4th DCA 2016) ("'While a verified complaint may serve the same purpose as an affidavit . . . , the complaint's allegations must meet the requirements of the rule governing supporting and opposing affidavits.'" (quoting Lindgren v. Deutsche Bank Nat'l Tr. Co., 115 So. 3d 1076, 1076 (Fla. 4th DCA 2013))). Here, the Second Amended Complaint's verification was not based on Appellants' personal knowledge, but was "to the best of [Appellants'] knowledge and belief." "A verification which is improperly based on information and belief is insufficient to entitle the verifying party to relief because the verification is qualified in nature." Ballinger v. Bay Gulf Credit Union, 51 So. 3d 528, 529 (Fla. 2d DCA 2010). Accordingly, as the verification of Appellants'

Second Amended Complaint was qualified in nature, it failed to constitute legally sufficient evidence to establish a basis for personal jurisdiction over Appellees.

Because Appellants failed to rebut Appellees' affidavits with Estes's counter-affidavit, the trial court did not abuse its discretion by denying limited jurisdictional discovery. Cf. Rollet, 159 So. 3d at 356 ("The . . . affidavit served to shift the burden to de Bizemont to refute or rebut the allegations by providing her own affidavit or other sworn proof to establish a basis for personal jurisdiction of Rollet. By failing to do so, de Bizemont acted at her own peril in attending a non-evidentiary hearing at which the trial court would be able to consider only the complaint, the motion to dismiss, and Rollet's affidavit.").

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's order granting Appellees' motions to dismiss for lack of personal jurisdiction.

AFFIRMED.

28