# Third District Court of Appeal

## State of Florida

Opinion filed October 19, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2272
Lower Tribunal No. 19-3471
_____

**Alejandro Rebolledo,**
Appellant,

vs.

**Joaquin Chaffardet,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Jorge Diaz-Cueto, for appellant.

Ricardo E. Pines, P.A. and Ricardo E. Pines, for appellee.

Before LOGUE, HENDON, and MILLER, JJ.

MILLER, J.

This appeal highlights the difficulties inherent in applying a traditional personal jurisdiction framework to an Internet-based defamation claim. Appellant, Alejandro Rebolledo, an exiled former Venezuelan judge, challenges an order dismissing his slander lawsuit for lack of personal jurisdiction over appellee, Joaquin Chaffardet. Chaffardet is alleged to have defamed Rebolledo in an interview with Patricia Poleo, a prominent Venezuelan investigative journalist, conducted outside of Florida. Video of that interview was later uploaded to YouTube by a third party and purportedly accessed by viewers in Miami-Dade and Broward County. On appeal, Rebolledo contends the trial court erred in determining that Chaffardet lacked sufficient minimum contacts with Florida to satisfy the due process component integral to any jurisdictional analysis.[1] We affirm.

## BACKGROUND

Poleo owns and hosts a program known as "Factores de Poder," which focuses primarily on Latin American and Spanish politics. Poleo uploads and shares digital video clips on YouTube, rendering the clips viewable, searchable, and downloadable anywhere there is Internet access.

---

[1] We summarily affirm the remaining issues on appeal. See Cummins v. Cummins, 891 So. 2d 637, 638–39 (Fla. 5th DCA 2005); Shoma Coral Gables, LLC v. Gables Inv. Holdings, LLC, 307 So. 3d 153, 164 (Fla. 3d DCA 2020); Arguelles v. Citizens Prop. Ins. Corp., 278 So. 3d 108, 113 (Fla. 3d DCA 2019).

2

Chaffardet is a resident of Houston, Texas. In 2018, Poleo interviewed him at an undisclosed location outside of Florida regarding events that occurred in Venezuela, Guatemala, and Panama. During the interview, Chaffardet made certain derogatory statements about Rebolledo. A digital recording of the interview was later uploaded to YouTube.

Rebolledo learned of the video and filed suit against Chaffardet in the Miami-Dade circuit court seeking damages for slander. Early iterations of the complaint were dismissed, without prejudice, on jurisdictional grounds. As pertinent to this appeal, by way of a second amended complaint, Rebolledo alleged that "Factores de Poder" announces it is regularly filmed in Miami-Dade County and that it is common knowledge the primary program audience consists of exiled Venezuelans residing in Florida. He further asserted the interview was accessed by viewers in Miami-Dade County.

Chaffardet moved to dismiss the complaint for lack of personal jurisdiction. In an accompanying affidavit, Chaffardet attested he was a resident of Texas, not Florida, and the program segment was filmed outside of Florida. He denied having any contacts, let alone minimum contacts, with Florida, directing his statements at a Florida audience, intending to cause harm in Florida, and exercising any control over the production or

3

dissemination of the video. "Upon information and belief," he further denied the interview was aired in Florida.

Rebolledo did not adduce any sworn testimony or otherwise refute Chaffardet's affidavit. After convening a non-evidentiary hearing, the trial court dismissed the suit. A motion for rehearing proved unsuccessful, and the instant appeal ensued.

## STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is subject to de novo review. See Castillo v. Concepto Uno of Mia., Inc., 193 So. 3d 57, 59 (Fla. 3d DCA 2016).

## ANALYSIS

### Two-Prong Jurisdictional Inquiry

In the landmark case of Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989), the Florida Supreme Court articulated the two-prong test for determining whether a Florida court is authorized to assert personal jurisdiction over a nonresident defendant. The initial inquiry is whether "the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of [Florida's long-arm] statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demonstrated to satisfy due process

4

requirements."  Id. (quoting Unger v. Publisher Entry Serv., Inc., 513 So. 2d 674, 675 (Fla. 5th DCA 1987)).

The first inquiry is governed by Florida's long-arm statute, codified in section 48.193, Florida Statutes (2022).  The second inquiry implicates the Fourteenth Amendment.  Thus, it is "controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement."  Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 584 (Fla. 2000).  It requires the court to determine whether "the foreign [resident] maintains 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Id. (second alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

***Burden of Proof***

In Venetian Salami, the Florida Supreme Court explained the proper procedure for challenging the exercise of personal jurisdiction by way of a motion to dismiss:

> Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts.  By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings.  A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support

5

of his position.  The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained.

554 So. 2d at 502 (citations omitted).  "If a plaintiff chooses not to file an affidavit to controvert the defendant's affidavit, the factual assertions of the defendant's affidavit are treated as true."  <u>Northwind Air Sys. v. Terra's Garden, LLC</u>, 273 So. 3d 1085, 1088 (Fla. 3d DCA 2019).  As a result, "[i]f no such sworn proof is forthcoming from the plaintiff as to the basis for jurisdiction, the trial court must grant the defendant's motion to dismiss." <u>Tobacco Merchs. Ass'n of U.S. v. Broin</u>, 657 So. 2d 939, 941 (Fla. 3d DCA 1995).  "If the plaintiff files a counter-affidavit raising conflicting facts," however, "the trial court should then hold a limited evidentiary hearing to resolve any disputed facts relating to jurisdiction."  <u>Id.</u>

Here, the unverified operative complaint was met with a motion to dismiss and an affidavit contesting personal jurisdiction.  Rebolledo did not file any sworn opposition to the motion.  Consequently, the statements set forth in the affidavit must be treated as true.  <u>See</u> <u>Northwind</u>, 273 So. 3d at 1088.

***Minimum Contacts***

In 1945, the Supreme Court upended nearly seven decades of jurisprudence and shifted away from the "rigidly territorial" belief espoused in

6

Pennoyer v. Neff, 95 U.S. 714 (1877), that "a tribunal's jurisdiction over persons reaches no farther than the geographic bounds of the forum." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see also Douglas D. MacFarland, Drop the Shoe: A Law of Personal Jurisdiction, 68 Mo. L. Rev. 753, 755–56 (2003). In the seminal case of International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Court formulated the guiding due process principle that States are authorized to exercise jurisdiction beyond their borders over those nonresidents who have such "minimum contacts" with the State "that the maintenance of suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

In analyzing minimum contacts, courts have distinguished between general and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984). General jurisdiction arises when a defendant maintains systematic and continuous activities with the forum state. See id. at 415. Specific jurisdiction exists when the claim relates to conduct purposely directed at the forum state. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).

In this case, we summarily reject the claim that the record supports a finding of general jurisdiction and therefore limit our discussion to specific

jurisdiction. Under the specific jurisdiction rubric, the court must engage in a three-prong inquiry. See Estes v. Rodin, 259 So. 3d 183, 192–93 (Fla. 3d DCA 2018) (citing Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339, 1355 (11th Cir. 2013)). First, the inquiring court must determine whether the claim underpinning the litigation directly relates to or arises out of the defendant's contacts with the forum. Estes, 259 So. at 192. Second, because a nonresident defendant must have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign, the court must determine whether those contacts constitute purposeful availment of the benefits and protections afforded by the laws of the forum. Id. Third, if the plaintiff's case clears the first two hurdles, the court then must analyze the overall reasonableness of an exercise of jurisdiction in light of a variety of pertinent factors that touch upon the fundamental fairness of an exercise of jurisdiction. Id.

In cases involving intentional torts, courts have consistently applied the "effects test" first formulated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783 (1984), as an alternative method for establishing purposeful availment. In Calder, the Court concluded that a California state court had personal jurisdiction over The National Enquirer, a nationally distributed publication with editorial offices in Florida, and a reporter and an

editor, both Florida residents, in a libel lawsuit involving an article about the California activities of a Californian actress.  Id. at 785–86.  Reasoning that the article described the "California activities of a California resident[,] . . . impugned the professionalism of an entertainer whose television career was centered in California[,] . . . was drawn from California sources, and the brunt of the harm . . . was suffered in California," the Court determined that jurisdiction over the defendants was "proper in California based on the 'effects' of their Florida conduct in California."  Id. at 788–79.

In Keeton v. Hustler Magazine Inc., 465 U.S. 770 (1984), decided the same day as Calder, the Court reiterated the proposition that any minimum contacts inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation,'" id. at 775 (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)), and concluded that a New Hampshire federal district court was authorized to exercise jurisdiction over a magazine publisher, an Ohio corporation with its principal place of business in California.  Keeton, 465 U.S. at 777–78.  The Court based its conclusion on the fact that the defendant's magazine, in which the alleged libel appeared, had a monthly circulation in New Hampshire of 10,000 to 15,000 copies.  Id. at 772–74. This established that the magazine publisher "continuously and deliberately exploited the New Hampshire market," giving rise to a reasonable

9

expectation of being haled into court there in an action based on the contents of the magazine.  Id. at 781.

Although Calder and Keeton were released simultaneously and involved the same overarching issue, the two decisions relied upon independent, but conceptually overlapping, methods of establishing minimum contacts.  Calder invoked the in-state effects of out-of-state activity, while Keeton cited activity targeted at the forum state.

Thirty years later, the Court refined the parameters of the effects test in Walden v. Fiore, 571 U.S. 277 (2014).  There, the Court concluded that a Nevada federal district court could not assert personal jurisdiction over a law enforcement officer who seized cash from the plaintiffs at an airport in Georgia while they were traveling from Puerto Rico to Nevada.  Id. at 279–80.  The Court reasoned that a finding of jurisdiction could not be predicated solely on the plaintiffs' connections to Nevada and the fact that they felt the effects of the delayed return of the funds while they were residing in Nevada.  Id. at 289–90.  Under these circumstances, the Court stated the defendant's connection to the forum was not purposeful but rather "random" and "fortuitous."  See id. at 290–91.

In arriving at its holding, the Walden Court explained that "[d]ue process limits on the State's adjudicative authority principally protect the

10

liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." Id. at 284. Thus, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Id.

Two significant principles emerge from Walden bearing on whether such conduct creates a substantial connection. First, the inquiry is essentially defendant-centric. "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). In this regard, "contacts between the plaintiff (or third parties) and the forum State," Walden, 571 U.S. at 284, however significant, "cannot be 'decisive in determining whether the defendant's due process rights are violated,'" id. at 285 (quoting Rush v. Savchuk, 444 U.S. 320, 332 (1980)); see also Helicopteros, 466 U.S. at 417.

Second, the inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 571 U.S. at 285. Accordingly, courts may properly assert jurisdiction

> over defendants who have purposefully "reach[ed] out beyond" their State and into another by, for example, entering a contractual relationship that "envisioned continuing and wide-reaching contacts" in the forum State, or by circulating magazines to "deliberately exploi[t]" a market in the forum State[.] And although physical presence in the forum is not a prerequisite to jurisdiction,

11

> physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact.

Id. (citations omitted) (first and second alterations in original) (first quoting Burger King, 471 U.S. at 479–80; and then quoting Keeton, 465 U.S. at 781).

Calder and its progeny support the proposition that a single tortious act is sufficient to establish purposeful availment, "without regard to whether the defendant ha[s] any other contacts with the forum state." Estes, 259 So. 3d at 193 (quoting Louis Vuitton, 736 F.3d at 1356)). This occurs when "the tort: (1) [was] intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." Id. (alterations in original) (quotation marks omitted) (quoting Louis Vuitton, 736 F.3d at 1356).

Applying the effects test to cyber-based torts is not always a simple task. "The unique nature of the Internet . . . gives instant access to potentially harmful communication anywhere in the world." Allison MacDonald, YouTubing Down the Stream of Commerce: Eliminating the Express Aiming Requirement for Personal Jurisdiction in User-Generated Internet Content Cases, 19 Alb. L.J. Sci. & Tech. 519, 524 (2009). Thus, intent is often nebulous.

Nonetheless, <u>Walden</u> has made it clear that "the foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there," <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980), and the effects test prevents a nonresident defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum in the absence of indicia the defendant expressly aimed his conduct at the State. <u>See Walden</u>, 571 U.S. at 289–90. In this manner, the effects test "distinguishes the requirement of 'express aiming' (the second prong) from the requirement that there be 'knowledge' that harm is likely to be suffered in the forum state (the third prong)." <u>Xcentric Ventures, LLC v. Bird</u>, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010).

Applying these principles to the case at hand, we conclude that Chaffardet's contacts fall short of that necessary to satisfy either traditional purposeful availment or the second prong of the <u>Calder</u> effects test. Chaffardet presented undisputed, direct evidence that he did not make defamatory statements or send defamatory material to anyone in Florida. He further attested he did not direct his statements at Florida or intend to cause harm in Florida. Given the burden-shifting <u>Venetian Salami</u> framework,

13

these statements must be accepted as true.  See Northwind, 273 So. 3d at 1088.

Unlike the defendants in Calder, there is no indication Chaffardet sourced his statements in Florida or his comments concerned Florida activities.  See Calder, 465 U.S. at 788–79.  While Rebolledo persuasively asserts it was reasonably foreseeable that the comments would reach a Florida audience, mere knowledge that the brunt of the alleged harm would be felt in the forum state is insufficient to establish purposeful direction or expressing aiming under Walden.  See Walden, 571 U.S. at 289–90; see also Young v. New Haven Advoc., 315 F.3d. 256, 263 (4th Cir. 2002) ("The newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers."); Medinah Mining, Inc. v. Amunategui, 237 F. Supp. 2d 1132, 1138 (D. Nev. 2002) ("[W]e agree with the courts that have found that a showing that residents of a forum had access to a website is insufficient to prove that defamatory statements were aimed at the forum."); Bailey v. Turbine Design, Inc., 86 F. Supp. 2d 790, 796 (W.D. Tenn. 2000) ("[T]he alleged defamatory comments had nothing to do with plaintiff's state of residence.  Thus, it cannot be said that the defamatory statements constitute actions 'expressly aimed' at Tennessee."); Novak v. Benn, 896 So. 2d 513, 520 (Ala. Civ. App. 2004) ("Although it can be inferred that

[defendant] knew of [plaintiff's] status as an Alabama resident, it cannot reasonably be said that [defendant] expressly aimed his allegedly tortious conduct at Alabama . . . ."); Dailey v. Popma, 662 S.E.2d 12, 19 (N.C. Ct. App. 2008) ("[W]hether internet postings confer jurisdiction in a particular forum hinges on the manifested intent and focus of the defendant.").

Further, here, a third person, not Chaffardet, uploaded the video to YouTube, rendering it accessible to Internet users in Florida. It is axiomatic that the "unilateral activity of another party or a third person is not an appropriate [jurisdictional] consideration." Helicopteros, 466 U.S. at 417. Moreover, the availability of a digital recording in the forum state, without more, is insufficient to confer specific jurisdiction in a media defamation case. See TV Azteca v. Ruiz, 490 S.W.3d 29, 45 (Tex. 2016). We cannot therefore infer from the fact that publication occurred in Miami-Dade County that Chaffardet aimed his conduct at Florida.

Accordingly, and remaining cognizant that the relationship between Internet activities and personal jurisdiction is a dynamic and evolving area of the law, under the current framework, we impute no error to the decision by the trial court. Thus, we affirm the order under review.

Affirmed.